909 So.2d 672 (2005)
STATE of Louisiana, Appellee
v.
Quincy LEE, Appellant.
No. 39,969-KA.
Court of Appeal of Louisiana, Second Circuit.
August 17, 2005.
Rehearing Denied September 15, 2005.
*674 Louisiana Appellate Project by Paula Corley Marx, William Jarred Franklin, Lafayette, for Appellant.
Quincy Lee John, pro se.
Schuyler Marvin, District Attorney, John Michael Lawrence, Robert Lane Pittard, Assistant District Attorneys, for Appellee.
Before BROWN, STEWART and DREW, JJ.
DREW, J.
Following trial for the crime of aggravated burglary, the jury convicted Quincy Lee of the responsive verdict of simple burglary of an inhabited dwelling. Adjudicated as a third felony habitual offender, Lee received a sentence of life imprisonment without benefits. We affirm the conviction and sentence.

*675 FACTS
Lucy Jureski lived at 916 Wanda Street in Bossier City and shared the home with her children and fiancé, Oscar Rodriguez. At about 2:00 p.m. on October 31, 2002, Jureski walked through her front door with her young niece and discovered a lone male burglar, whom she ordered out of her house. As she turned around, picked up her niece and attempted to flee through the open front door, she felt her T-shirt tighten and pull against her neck in a "choking-type fashion" as she was grabbed from behind. The burglar, whom she had never seen before, then released her and ran out the back door. Although she got a good look at him, she was unable to make a positive identification. Both Jureski and Rodriguez testified that they did not know the defendant, and never gave him permission to enter their home or to take any of their belongings.
The house, which had just been thoroughly cleaned, was in disarray, as:
 the living room television was missing;
 several home appliances had been disconnected and/or removed from the entertainment center, with the VCR found on the living room sofa;
 a clear plastic jar containing an extra wallet, cash, credit cards, and identification had been moved from the master bedroom to the living room;
 the children's television and Nintendo game were in the backyard; and
 there were scratches on the open backdoor, and the backyard gate was open.
A salesman working at a nearby used-car lot saw a silver Taurus or Sable automobile travel across a vacant field behind Wanda Street at about 2:00 p.m. on the day of the crime. The trunk lid was open and the salesman saw a large object inside. Fingerprints lifted from three separate items located in the victims' living room positively matched those of the defendant, who was then arrested.
Bossier City Detective Richard Nunnery advised the defendant of his Miranda rights and interviewed the defendant at his police department office. The defendant denied any knowledge of the burglary, the location (916 Wanda Street) in particular, and Bossier City in general. The defendant stated that on the date of the crime, he was in Dallas, Texas, with his friend, Mark Dunn, a fact later denied by Dunn, who himself had seen the defendant driving a silver, gray, or white Taurus automobile.
After once more advising the defendant of his Miranda rights, Nunnery again interviewed the defendant, telling him that Dunn had denied being with him on the date of the crime. The defendant stated that he was probably with someone else at that time, but could not say with whom or where. The defendant also told Nunnery that he had never lived in Bossier City and he did not drive a vehicle. Further investigation revealed that the defendant's address in 1995 was 916 Wanda Street, the same house at which the burglary occurred.
The defendant testified at trial that:
 on October 31, 2002, he received a telephone call from his uncle, Ronnie Lee, to meet him at 916 Wanda Street, where his aunt previously lived, because Ronnie needed to borrow some money;
 he and his brother, Jacoby, rode over there with a friend named "Kerry";
 Ronnie greeted him at the door and invited him inside;
 he assumed the house belonged to Ronnie's girlfriend;
 after asking Ronnie for a glass of water, the defendant looked around the *676 living room, touched the VCR as he moved it onto the sofa, opened the entertainment center to look at what he thought was Ronnie's music collection, and moved a plastic bucket onto a table so he could set down his water glass; and
 because he did not have enough funds to lend to Ronnie, he left the residence.
The defendant's 16-year-old brother, Jacoby Lee, testified that he went to a house in Bossier City with the defendant between 5:00 and 6:00 p.m. on October 31, 2002. A black man, who looked somewhat like his uncle, answered the door. According to Jacoby, the defendant entered and then exited the house, carrying nothing out with him. Jacoby admitted on cross-examination that he only came forward with this information a few weeks prior to trial.
The defense also called the defendant's uncle, Ronnie Lee, who testified that the defendant asked him to sign an affidavit admitting his own guilt of the instant burglary and exonerating the defendant. The uncle also stated that even though he signed the affidavit for the defendant, he knew nothing of the burglary at 916 Wanda Street, explaining that he signed the affidavit in an attempt to help the defendant avoid a life sentence.
The defendant's grandmother, Gertrude Lee, testified that although the defendant's aunt had lived at 916 Wanda Street, the defendant had never lived at that address, but he visited it frequently and was familiar with the location.

Verdict, Habitual Offender Proceeding, and Sentencing
After hearing all the evidence, the jury unanimously returned the responsive verdict of simple burglary of an inhabited dwelling. The state filed a habitual offender bill of information, and followed with an amended bill, in response to a motion to quash filed by the defendant. The amended bill properly reflected the defendant's prior convictions of simple burglary and simple robbery.
At the beginning of the habitual offender hearing, the trial court noted that the defendant's pro se motion to quash the habitual offender bill had been previously denied. The state then presented evidence of the defendant's three felony convictions:
 simple burglary, committed in Bossier Parish on April 20, 1998;
 simple robbery, committed in Caddo Parish on December 8, 1998; and
 the instant offense, simple burglary of an inhabited dwelling, committed in Bossier Parish on October 31, 2002.
The evidence included certified copies of the bills of information, district court minutes, and transcripts of the guilty pleas from the felonies charged in the amended bill. A fingerprint identification expert compared the defendant's fingerprints to the fingerprints on all three bills of information and determined that they were all made by the defendant. The court minutes and transcripts of the guilty plea proceedings for the first two felonies evidenced that the defendant was represented by counsel and the pleas were taken as per Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969). The defendant did not object to the introduction of the bills of information, court minutes, and transcripts, although it was stated by defense counsel that he was not admitting that the documents pertained to the defendant. The defendant offered no affirmative evidence reflecting any infringement of his rights or procedural irregularity. The trial court found the defendant to be a third felony habitual offender.
*677 The trial court denied defendant's motions for new trial and post-verdict judgment of acquittal. Before imposing sentence on November 15, 2004, the trial court stated that the mandatory sentence of life imprisonment applied to the defendant under La. R.S. 15:529.1(A)(1)(b)(ii). The trial court imposed life imprisonment without benefit of parole, probation, or suspension of sentence. The defendant's timely-filed motion to reconsider sentence was denied.

DISCUSSION
Counsel for the defendant has filed two assignments of error in this appeal: Sufficiency of the evidence and excessiveness of sentence. The remaining assignments of error were filed pro se.

Sufficiency of the Evidence
Defendant argued that the state failed to prove that an unlawful entry occurred and that the defendant intended to commit a felony or theft therein, both of which are essential elements of simple burglary of an inhabited dwelling. In the defendant's view, the discovery of his fingerprints in the home did not prove the requisite intent and was only circumstantial evidence that he committed the crime. The defendant also relied on the assertions that none of the victims' property was found in his possession, and none of the witnesses identified him as the burglar.
The state pointed to the evidence that the defendant was the perpetrator, specifically, the fingerprint match and his own testimony as well as that of the defense witnesses.
The question of sufficiency of evidence is properly raised by a motion for post-verdict judgment of acquittal. State v. Howard, 31,807 (La.App. 2d Cir.8/18/99), 746 So.2d 49, writ denied, 1999-2960 (La.5/5/00), 760 So.2d 1190. The standard of appellate review for a sufficiency of the evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Cummings, 95-1377 (La.2/28/96), 668 So.2d 1132. This standard, now legislatively embodied in La. C. Cr. P. art. 821, does not provide the appellate court with a vehicle to substitute its own appreciation of the evidence for that of the fact finder. State v. Robertson, 96-1048 (La. 10/4/96), 680 So.2d 1165. The appellate court does not assess the credibility of witnesses or reweigh evidence. State v. Smith, 94-3116 (La.10/16/95), 661 So.2d 442.
The Jackson standard is applicable in cases involving both direct and circumstantial evidence. An appellate court reviewing the sufficiency of evidence in such cases must resolve any conflict in the direct evidence by viewing that evidence in the light most favorable to the prosecution. When the direct evidence is thus viewed, the facts established by the direct evidence and inferred from the circumstances established by that evidence must be sufficient for a rational trier of fact to conclude beyond a reasonable doubt that defendant was guilty of every essential element of the crime. State v. Sutton, 436 So.2d 471 (La.1983); State v. Owens, 30,903 (La.App. 2d Cir.9/25/98), 719 So.2d 610, writ denied, 98-2723 (La.2/5/99), 737 So.2d 747. A reviewing court accords great deference to a jury's decision to accept or reject the testimony of a witness in whole or in part. State v. Gilliam, 36,118 (La.App. 2d Cir.8/30/02), 827 So.2d 508, writ denied, XXXX-XXXX (La.11/14/03), 858 So.2d 422.
Where there is conflicting testimony about factual matters, the resolution of which depends upon a determination of the credibility of the witnesses, the matter is *678 one of the weight of the evidence, not its sufficiency. State v. Allen, 36,180 (La. App. 2d Cir.9/18/02), 828 So.2d 622, writs denied, 2002-2595 (La.3/28/03), 840 So.2d 566, 2002-2997 (La.6/27/03), 847 So.2d 1255, cert. denied, 540 U.S. 1185, 124 S.Ct. 1404, 158 L.Ed.2d 90 (2004).
In cases involving a defendant's claim that he was not the person who committed the crime, the Jackson rationale requires the state to negate any reasonable probability of misidentification in order to carry its burden of proof. State v. Powell, 27,959 (La.App. 2d Cir.4/12/96) (on rehearing), 677 So.2d 1008, writ denied, 96-1807 (La.2/21/97), 688 So.2d 520. Fingerprint evidence has been upheld as sufficient to sustain a conviction. State v. Grissom, 467 So.2d 858 (La.App. 2d Cir.1985).
La. R.S. 14:60, in pertinent part, defines aggravated burglary as the unauthorized entering of any inhabited dwelling with the intent to commit a felony or any theft therein, if the offender commits a battery upon any person while in such place, or in entering or leaving such place. A battery is defined in part as the intentional use of force or violence upon the person of another. La. R.S. 14:33. Although intent is a question of fact, it may be inferred from the circumstances. State v. Robinson, 29,488 (La.App. 2d Cir.6/18/97), 697 So.2d 607, writ denied, 97-1845 (La.12/12/97), 704 So.2d 1200.
The defendant did not make a contemporaneous objection to the legislatively-approved responsive verdict of simple burglary of an inhabited dwelling. Thus, even if there was insufficient evidence to support the verdict of simple burglary of an inhabited dwelling, the defendant cannot complain, provided that the evidence is sufficient to support the charged offense of aggravated burglary. State v. Schrader, 518 So.2d 1024 (La.1988); State v. Mitchell, 35,970 (La.App. 2d Cir.5/8/02), 818 So.2d 807.
After viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the aggravated burglary proven beyond a reasonable doubt. Jackson v. Virginia, supra. The state proved that the defendant made an unauthorized entry into the victims' home with the intent to commit a felony or any theft. While in the victims' home, the defendant committed a battery upon Jureski by intentionally using force upon her person.
Although the defendant claims that he was not the person who committed the crime, the state negated any reasonable probability of misidentification, and established the defendant's identity as the burglar by testimony and physical evidence, including fingerprint identification. The jury obviously rejected Lee's explanation of how his fingerprints were found inside the victims' home.

Excessive Sentence
Arguing that the trial court imposed an excessive sentence, the defendant asserts that the trial court:
 gave only the most cursory of reasons prior to the imposition of sentencethat the defendant was a third felony offender with two prior felony convictions;
 failed to observe that none of those convictions was of a violent nature;
 took into account no other personal information; and
 rendered a sentence that should be vacated, with the matter being remanded for re-sentencing, with consideration of mitigating factors.
The state responds that:
 each prior conviction was entered by a free and voluntary guilty plea;

*679  the evidence adduced at the habitual offender proceeding was admitted without objection;
 La. R.S. 15:529.1(A)(1)(b)(ii) mandates a sentence of life imprisonment; and
 the punishment is not out of proportion to the severity of the crime.
Because the sentence imposed for the habitual offender adjudication is prescribed by statute, the trial court's compliance with La. C. Cr. P. art. 894.1 is not required. State v. Gay, 34,371 (La.App. 2d Cir.4/4/01), 784 So.2d 714; State v. Owens, 32,642 (La.App. 2d Cir.10/27/99), 743 So.2d 890, writ denied, XXXX-XXXX (La.9/29/00), 769 So.2d 553. It would be an exercise in futility for the trial court to discuss the factors enumerated in that article when the court had no discretion in sentencing the defendant. See State v. Carlos Johnson, 31,448 (La.App. 2d Cir.3/31/99), 747 So.2d 61, writ denied, 99-1689 (La.11/12/99), 749 So.2d 653, cert. denied, 529 U.S. 1114, 120 S.Ct. 1973, 146 L.Ed.2d 802 (2000).
In this case, La. R.S. 15:529.1(A)(1)(b)(ii) mandated a life sentence without benefits for the defendant because he is a third felony offender. One prior felony, simple robbery, is a crime of violence under La. R.S. 14:2(13)(y), while the other prior felony, simple burglary, is punishable by imprisonment for 12 years under La. R.S. 14:62.2.
As this court stated in State v. Ponsell, 33,543 (La.App. 2d Cir.8/23/00), 766 So.2d 678, 685, writ denied, 2000-2726 (La.10/12/01), 799 So.2d 490:
Although ... the Louisiana Supreme Court stated that courts have the power to declare a mandatory minimum sentence excessive under Article I, Section 20 of the Louisiana Constitution, this power should only be exercised in rare cases and only when the court is firmly convinced that the minimum sentence is excessive. (Citations omitted.)
Since the habitual offender law in its entirety is constitutional, the minimum sentences it imposes upon multiple offenders are also presumed to be constitutional. State v. Walter Johnson, 97-1906 (La.3/4/98), 709 So.2d 672. The mandatory life sentences required are presumptively constitutional and should be accorded great deference by the judiciary. State v. Wade, 36,295 (La.App. 2d Cir.10/23/02), 832 So.2d 977, writ denied, 2002-2875 (La.4/4/03), 840 So.2d 1213. State v. Walter Johnson, supra, and State v. Wade, supra, also held that the burden was on the defendant to rebut the presumption that a mandatory minimum sentence is constitutional. In order to do so, it must be clearly and convincingly shown by the defendant that:
[he] is exceptional, which in this context means that because of unusual circumstances this defendant is a victim of the legislature's failure to assign sentences that are meaningfully tailored to the culpability of the offender, the gravity of the offense, and the circumstances of the case.
State v. Walter Johnson, 709 So.2d at 676 (citing Judge Plotkin's concurrence in State v. Young, 94-1636 (La.App. 4th Cir.10/26/95), 663 So.2d 525, writ denied, 95-3010 (La.3/22/96), 669 So.2d 1223).
Furthermore, a trial judge may not merely rely upon the nonviolent nature of the instant or past crimes as evidence which justifies rebutting the presumption of constitutionality. The lack of violence cannot be the only reason, or even the main reason, for declaring such a sentence excessive. State v. Lindsey, 99-3302 (La.10/17/00), 770 So.2d 339; State v. Walter Johnson, supra; State v. Wade, supra. Here, the defendant's argument that *680 the prior convictions were nonviolent is factually incorrect.
A review of the record shows that the defendant failed to rebut the presumption that his mandatory minimum sentence is constitutional. That is, the defendant did not clearly and convincingly show that he is exceptional.

Denial of Right to Self-Representation
According to the trial court minutes, the defendant's first appearance in court was on November 27, 2002, when he was referred to the Indigent Defender Board ("IDB"). The trial was not held until 14 months later, after the IDB had appeared in court with the defendant numerous times. The defendant never complained about his attorneys.
At the January 12, 2004, trial, the defendant appeared in court with Larion Hillman and Elizabeth Gardner of the IDB. Before the jury was selected, the defendant filed a pro se motion for self-representation in which he asked that his new trial IDB co-counsel be dismissed because they were "ignorant" of the case and "unprepared" to proceed and would therefore be ineffective. In his motion, the defendant stated that he was ready to proceed with trial with court-appointed standby counsel and that his motion was not a delay tactic.
The motion, which was prepared by the defendant on the night before, was considered by the trial court and denied as "untimely" and "disruptive to the trial process," which had been scheduled "for a significant period of time." The trial court noted that the IDB represented the defendant from the outset, and counsel from the IDB were present and ready to go to trial. The defendant noted that he clearly and unequivocally declared to the trial court that he wanted to represent himself.
The court in State v. Brown, XXXX-XXXX (La.4/12/05), 907 So.2d 1, summarized the law applicable to the right to self-representation:
Both the Louisiana and federal constitutions guarantee a criminal defendant's right to the assistance of counsel. Nevertheless, a defendant may elect to represent himself if the choice is "knowingly and intelligently made" and the assertion of the right is "clear and unequivocal." (Citations omitted.)
A defendant who waits until after the commencement of trial to assert for the first time his right to represent himself, after having acquiesced in representation by an attorney throughout pretrial procedures and the institution of trial, cannot thereafter successfully assert that right unless he makes a showing that the prejudice to his legitimate interests overbalances the potential disruption of the proceeding already in progress. State v. Hegwood, 345 So.2d 1179 (La.1977).
In Hegwood, supra, the defendant acquiesced in the appointment of counsel until the morning of trial. Before trial had commenced, Hegwood asked for a continuance because he lacked confidence in his court-appointed counsel and needed time to retain private counsel.[1] After the trial judge refused to delay the trial, Hegwood for the first time expressed his wish to dismiss his appointed counsel and to represent himself. The trial judge refused to allow the dismissal of Hegwood's appointed attorney on the day of trial. The appellate court noted that the record did not indicate that Hegwood had given any serious thought to self-representation, *681 or that he had explored the possibility of the grave risks inherent in such action. The appellate court was convinced that Hegwood's motion was intended only as another delaying tactic, not as a clear and unequivocal assertion of his right to represent himself. The appellate court concluded that Hegwood had impliedly waived his right to self-representation.
In the matter before us, we decline to second-guess the trial court in its ruling about this eleventh hour request. The defendant had acquiesced in representation by the IDB throughout pretrial procedures, and he waited until the morning of the trial to assert for the first time his right to represent himself. These circumstances indicate that his request was merely a delaying tactic.
The right to self-representation is not absolute. A defendant must voluntarily and intelligently reject representation by an attorney and elect to conduct his own defense and must do so in a timely manner. Martinez v. Court of Appeal of California, 528 U.S. 152, 120 S.Ct. 684, 145 L.Ed.2d 597 (2000); State v. Turner, 37,162 (La.App.2d Cir.10/29/03), 859 So.2d 911, writ denied, XXXX-XXXX (La.3/26/04), 871 So.2d 347. The instant request was anything but timely.

Newly-discovered Evidence, Discovery of a Prejudicial Error, and Unconstitutionality of La. R.S. 15:529.1
The defendant did not argue these assignments of error in his brief. A mere statement of assignments of error in a brief does not constitute briefing of the assignments. Therefore, these assignments of error are abandoned. State v. Toney, 26,711 (La.App. 2d Cir.3/1/95), 651 So.2d 387. See also La. URCA Rule 2-12.4.

Ineffective Assistance of Counsel
The defendant contended that there was inadequate time between the appointment of new trial counsel and trial, which did not allow time to confer, prepare a defense, or conduct pre-trial investigation. The defendant stated that:
 Hillman visited him in jail on January 7, 2004, and told the defendant that he would be representing the defendant at trial, which was set for January 12, 2004;
 Hillman should have requested a continuance; and
 Hillman failed to subpoena witnesses to testify on his behalf.
According to the defendant, the witnesses and the information corroborating his story that they would have given at trial were:
 the notary on the affidavit executed by his uncle Ronnie Lee, who would state that Ronnie voluntarily signed the affidavit;
 Kerry Findley (or Finkley), who was with the defendant on the date of the crime and saw someone let the defendant into the residence;
 Scotty Green, who would verify that the defendant did not own a vehicle or have one in his possession on the day of the crime; and
 his grandmother, Gertrude Lee, who could verify that Ronnie wrote to her stating that he was going to "free" the defendant.
As a general rule, a claim of ineffective assistance of counsel is more properly raised in an application for post-conviction relief ("PCR") in the trial court than by appeal. This is because PCR creates the opportunity for a full evidentiary hearing under La. C. Cr. P. art. 930. State ex rel. Bailey v. City of West Monroe, 418 So.2d 570 (La.1982); State v. *682 Williams, 33,581 (La.App. 2d Cir.6/21/00), 764 So.2d 1164. A motion for new trial is also an accepted vehicle by which to raise such a claim. Id. When the record is sufficient, this issue may be resolved on direct appeal in the interest of judicial economy. State v. Ratcliff, 416 So.2d 528 (La.1982); State v. Willars, 27,394 (La.App. 2d Cir.9/27/95), 661 So.2d 673.
The right of a defendant in a criminal proceeding to the effective assistance of counsel is mandated by the Sixth Amendment to the U.S. Constitution. State v. Wry, 591 So.2d 774 (La.App. 2d Cir.1991). A claim of ineffectiveness of counsel is analyzed under the two-prong test developed by the United States Supreme Court in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).
To establish that his attorney was ineffective, the defendant first must show that counsel's performance was deficient. This requires a showing that counsel made errors so serious that he was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. The relevant inquiry is whether counsel's representation fell below the standard of reasonableness and competency as required by prevailing professional standards demanded for attorneys in criminal cases. Strickland, supra. The assessment of an attorney's performance requires his conduct to be evaluated from counsel's perspective at the time of the occurrence. A reviewing court must give great deference to trial counsel's judgment, tactical decisions, and trial strategy, strongly presuming he has exercised reasonable professional judgment. State v. Moore, 575 So.2d 928 (La.App. 2d Cir. 1991).
Second, the defendant must show that counsel's deficient performance prejudiced his defense. This element requires a showing the errors were so serious as to deprive the defendant of a fair trial, i.e., a trial whose result is reliable. Strickland, supra. The defendant must prove actual prejudice before relief will be granted. It is not sufficient for the defendant to show the error had some conceivable effect on the outcome of the proceedings. Rather, he must show that but for counsel's unprofessional errors, there is a reasonable probability the outcome of the trial would have been different. Strickland, supra; State v. Pratt, 26,862 (La. App. 2d Cir.4/5/95), 653 So.2d 174, writ denied, 95-1398 (La.11/3/95), 662 So.2d 9. A defendant making a claim of ineffective assistance of counsel must identify certain acts or omissions by counsel which led to the claim; general statements and conclusory charges will not suffice. Strickland, supra; State v. Jordan, 35,643 (La.App. 2d Cir.4/3/02), 813 So.2d 1123, writ denied, XXXX-XXXX (La.5/30/03), 845 So.2d 1067.
In State v. Potter, 612 So.2d 953 (La. App. 4th Cir.1993), writ denied, 619 So.2d 574 (La.1993), the court affirmed the trial court's finding that a homicide defendant received ineffective assistance of counsel, due in part to trial counsel's failure to interview and subpoena the defendant's girlfriend as a witness. This witness's proposed testimony was found to have corroborated the defendant's theory of self-defense in that it documented the most serious incident during which the victim harassed and threatened the defendant.
A review of the record does not show that trial counsel's representation fell below the standard of reasonableness and competency as required by prevailing professional standards demanded for attorneys in criminal cases. The defendant's broad statement that trial counsel had insufficient time to prepare for trial is not evidenced on the record, as witnesses who *683 were subpoenaed by the defense testified at trial. These witnesses included the defendant's grandmother, Gertrude Lee. The defense attorney's performance must be evaluated from counsel's perspective at the time of the occurrence. There was nothing to show that defendant's trial counsel erred in his tactical decision not to bring the witnesses listed by the defendant in brief before the jury. The election to call or not to call a particular witness is a matter of trial strategy and is not, per se, evidence of ineffective assistance. State v. Morrison, 32,123 (La.App. 2d Cir 7/22/99), 743 So.2d 232, writ denied, 99-3514 (La.5/26/00), 762 So.2d 1103. Giving great deference to trial counsel's judgment, tactical decisions, and trial strategy, we strongly presume he exercised reasonable professional judgment and find this complaint without merit.

Notice of Trial Date
The defendant argued that he was not given proper notice of the trial date, which prevented him from using compulsory process to subpoena witnesses in his favor. Alleging he was to be tried on January 12, 2004, on other offenses, not the instant offense, the defendant asserted the court's decision to proceed with trial was an abuse of discretion.
The record does not support the defendant's argument. Notice that he must appear for trial on January 12, 2004, was sent to him at the Caddo Correctional Center on December 30, 2003. The defendant filed a pro se motion for a speedy trial in this and several other matters on January 8, 2004. In that motion, the defendant requested that he be granted a trial date immediately and that the prosecutor be ordered to try the case on the date set by the court.
La. C. Cr. P. art. 702 requires that cases shall be set for trial by the court on motion of the state and may be set for trial on motion of the defendant. The article also mandates that the defendant be given notice of trial in sufficient time that he may summon his witnesses.
In State v. Luna, 00-858 (La.App. 5th Cir.10/31/00), 772 So.2d 249, writ denied, XXXX-XXXX (La.10/12/01), 799 So.2d 495, the court held that the defendant's right to call witnesses on his behalf was not violated when trial proceeded without defense witnesses, despite repeated requests that defense witnesses be subpoenaed. Luna had been sufficiently notified of trial to timely subpoena his witnesses. The court reviewed the record and determined that the defendant had actual notice of the trial date since one of the defendant's witnesses appeared for trial pursuant to a subpoena issued by the defendant.
As in State v. Luna, supra, the record in the instant case showed that the defendant had actual notice, and did, in fact, subpoena witnesses. The defendant did not show that lack of notice of the trial date prevented him from exercising his right to compel witnesses. Furthermore, since the defendant filed a pro se motion for speedy trial in this and several other matters on January 8, 2004 requesting an immediate trial date, he cannot now complain that the state responded appropriately.

Failure to Prove Discharge Dates
The defendant argued that the state failed to prove the discharge dates for his prior offenses, and therefore, the trial court erred in adjudicating him to be a habitual offender. The state proved beyond a reasonable doubt every essential element of the habitual offender bill under La. R.S. 15:529.1. See State v. Shelton, 621 So.2d 769 (La.1993). As previously noted, the defendant did not object to the introduction of the bills of information, court minutes, and transcripts, nor did he present *684 any affirmative evidence reflecting any procedural irregularity or infringement of his rights. This assignment of error is without merit.

DECREE
The defendant's conviction and sentence are AFFIRMED.
APPLICATION FOR REHEARING
Before BROWN, STEWART, GASKINS, DREW, and LOLLEY, JJ.
Rehearing denied.
NOTES
[1] La. C. Cr. P. art. 761 provides in part that a jury trial commences when the first prospective juror is called for examination.