GASKINS, J.
 

 |2Following a jury trial, the defendant, Fate Vincent Winslow, was convicted as charged of distribution of marijuana, in violation of La. R.S. 40:966(A)(1). He was subsequently adjudicated a fourth felony offender and sentenced to life imprisonment at hard labor without benefit of parole, probation or suspension of sentence. Due to the trial court’s failure to rule on the defendant’s motions for new trial and post verdict judgment of acquittal prior to sentencing, this court vacated the defendant’s sentence and remanded the matter to the trial court. On remand, the trial court denied the defendant’s motions and resentenced him to life imprisonment at hard labor without benefits. The defendant appealed. We affirm the defendant’s conviction, adjudication as a fourth felony offender, and sentence.
 

 FACTS
 

 | ¡¡During the evening of September 5, 2008, the Shreveport Police Department conducted an undercover prostitution operation. Officer Jerry Alkire was one of the undercover officers assigned to this operation. Wearing an audio surveillance device that transmitted his verbal transactions back to a surveillance officer, he entered a high crime area known for prostitution and narcotics on foot. He encountered the defendant and a white male.
 

 The defendant initiated contact with the officer, asking what he was looking for. Officer Alkire responded that he was looking for a girl, meaning a prostitute. The defendant said he could get him a girl and then asked if he was looking for anything else. The officer said he was not looking for anything else but would take some weed if the defendant had it. The defendant stated that he could get it for him and asked how much he wanted. Officer Al-kire asked if he could get two dime bags (street slang for two $10 bags of marijuana). The defendant said he could and asked if the officer had money. When the officer refused to front the money, the defendant said he would go get the drugs for a total of $25; the extra $5 was for
 
 *913
 
 going to get it. The defendant then told the white male that he needed his bike. The man allowed him to borrow it.
 

 RDuring the 10 minutes that the defendant was gone, Officer Alkire was approached by three black males; one asked the officer what he was looking for. The officer informed him that he was already being taken care of. One of the men produced a bag containing what appeared to be crack cocaine. The white male then told the other men that the officer was buying some weed. When one of the men asked the officer if he had money, he said he did not because he was concerned that the men meant to rob him. Officer Alkire lied and said he intended to take the defendant to his apartment to get money to pay for the marijuana. The men then walked off.
 

 The defendant returned on the bike. Officer Alkire observed the defendant stop and talk to the departing men for a few minutes. The defendant then returned to the officer with the marijuana and asked to be paid. Before paying, the officer observed that the substance produced by the defendant looked and smelled like marijuana. The officer gave the defendant a $20 bill and a $5 bill. The defendant asked if Officer Alkire had any more money. He said he had $4. The defendant offered to escort the officer back to his apartment for $4 to make sure he wasn’t robbed. The officer agreed.
 

 The white male was walking behind them with his bike. He began to complain that the defendant had used his bike and he had gotten nothing for it. The defendant went over to the man, talked to him, and handed him |asomething. At this point, the officer gave the code word to alert the surveillance officer that he was ready for the defendant to be arrested.
 

 Sergeant Ricky Scroggins pulled up in an unmarked car. The defendant was placed under arrest and searched. The officers recovered two $5 bills and a $1 bill. When they asked the defendant where the $20 bill paid to him by the officer was, the defendant denied selling drugs to Officer Alkire, insisting that “the white boy” sold him the drugs and had his money. The defendant was placed in the back of a patrol unit. Officer Alkire and Sergeant Scroggins went in search of the white male who had been walking with the defendant and the officer. They located him nearby. The $20 bill was recovered from the white male; he was not arrested.
 

 The defendant was charged with distribution of marijuana. Following a jury trial, he was convicted as charged by a vote of 10 to 2.
 

 The state filed a habitual offender bill against the defendant. He was adjudicated a fourth felony offender and sentenced to life imprisonment at hard labor without benefit of parole, probation or suspension of sentence. In a subsequent hearing, the defendant’s
 
 Dorthey
 
 motion,
 
 [1]
 
 motion for new trial, and motion for post verdict judgment of acquittal were denied.
 

 The defendant appealed. During a jurisdictional check by the appellate court, an error patent was discovered in that the trial court did not deny the ^defendant's motion for new trial and motion for post verdict judgment of acquittal prior to sentencing. This court vacated the defendant’s sentence and remanded the matter to the trial court for further proceedings. We directed the trial judge, in resentenc-ing the defendant, to reiterate the denial of pending
 
 pro se
 
 motions for clarity of the record. In compliance with this court’s order, on remand, the trial court denied all motions and resentenced the defendant to
 
 *914
 
 life imprisonment at hard labor without benefits.
 

 The defendant appealed again. Counsel for the defendant made three assignments of error. Additionally, the defendant made five
 
 pro se
 
 assignments of error.
 

 SUFFICIENCY OF EVIDENCE
 

 Both defense counsel and the defendant
 
 pro se
 
 challenged the sufficiency of the evidence supporting his conviction for distribution of marijuana. In particular, defense counsel argued that Officer Alkire may have been confused about who sold him the drugs because of the presence of the other men and the potential danger they posed to the officer’s safety.
 

 To present sufficient evidence of distribution of a controlled dangerous substance (CDS), the state must prove the following elements: (1) delivery or physical transfer of the CDS to its intended recipient; (2) guilty knowledge of the CDS at the time of the transfer; and (3) the exact identity of the CDS.
 
 State v. Ashley,
 
 44,861 (La.App.2d Cir.10/28/09), 26 So.3d 193.
 

 The proper test for determining a claim of insufficiency of evidence in a criminal case is whether, on the entire record, a rational trier of fact could find the defendant guilty beyond a reasonable doubt. On appeal, a reviewing court must view the evidence in the light most favorable to the state and must presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence.
 
 Jackson v. Virginia,
 
 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979);
 
 State v. Brown,
 
 43,916 (La.App.2d Cir.2/25/09), 4 So.3d 301,
 
 writ denied,
 
 2009-0701 (La.12/11/09), 23 So.3d 912.
 

 This standard, now legislatively embodied in La. C. Cr. P. art. 821, does not provide the appellate court with a vehicle to substitute its own appreciation of the evidence for that of the fact finder.
 
 State v. Pigford,
 
 2005-0477 (La.2/22/06), 922 So.2d 517;
 
 State v. Dotie,
 
 43,819 (La. App.2d Cir.1/14/09), 1 So.3d 833,
 
 writ denied,
 
 2009-0310 (La. 11/6/09), 21 So.3d 297. The appellate court does not assess the credibility of witnesses or reweigh evidence.
 
 State v. Smith,
 
 94-3116 (La.10/16/95), 661 So.2d 442. A reviewing court accords great deference to a jury’s decision to accept or reject the testimony of a witness in whole or in part.
 
 State v. Eason,
 
 43,788 (La.App.2d Cir.2/25/09), 3 So.3d 685,
 
 vnit denied,
 
 2009-0725 (La.12/11/09), 23 So.3d 913;
 
 State v. Hill,
 
 42,025 (La.App.2d Cir.5/9/07), 956 So.2d 758,
 
 writ denied,
 
 2007-1209 (La.12/14/07), 970 So.2d 529.
 

 In the absence of internal contradiction or irreconcilable conflict with physical evidence, one witness’s testimony, if believed by the trier of fact, is sufficient support for a requisite factual conclusion.
 
 State v. Gullette,
 
 43,032 (La.App.2d Cir.2/13/08), 975 So.2d 753;
 
 State v. Burd,
 
 40,480 (La.App.2d Cir.1/27/06), 921 So.2d 219,
 
 writ denied,
 
 2006-1083 (La.11/9/06), 941 So.2d 35. The testimony of a single undercover police officer is sufficient to convict one charged with the distribution of a CDS.
 
 State v. Kelley,
 
 36,602 (La. App.2d Cir.1/29/03), 836 So.2d 1243.
 

 Officer Alkire testified that the defendant asked him what he wanted and told him that he could get him two dime bags of marijuana; the defendant then left to get the marijuana, returned and handed the marijuana to the officer in exchange for $25. Sergeant Scroggins corroborated Officer Alkire’s testimony; he testified that he heard the transaction over the officer’s audio transmitting device and saw the defendant and Officer Alkire make a hand-to-hand exchange. A forensic chemist testified that the substance that the
 
 *915
 
 defendant sold to Officer Alkire was, in fact, marijuana.
 

 |9In viewing the evidence in the light most favorable to the state, a rational trier of fact could have found that the defendant committed the offense of distribution of marijuana. This court does not reweigh evidence or reassess the credibility of witnesses. The jury was given the opportunity to assess the credibility of the state’s witnesses, and this court must accord great deference to the jury’s decision to accept that testimony as credible.
 

 These assignments of error lack merit.
 

 HABITUAL OFFENDER
 

 ADJUDICATION
 

 In adjudicating the defendant as a fourth felony offender, the trial court relied upon evidence of the following prior convictions: 1985 simple burglary, 1994 simple burglary, and 2004 possession of Schedule II CDS (cocaine). The state produced certified bills of information with the defendant’s fingerprints in the 1985 and 2004 cases and an arrest sheet with his fingerprint in the 1994 one.
 
 [2]
 
 A fingerprint expert took the defendant’s prints in open court and compared them to the prints found on these documents; he testified that they all matched. The documents which contained the defendant’s fingerprints were also supported by certified court minutes.
 

 199⅛ Simple Burglary Conviction
 

 10 Defense counsel argues that the trial court erred in adjudicating the defendant as a fourth felony offender. Specifically, he asserts that in proving his 1994 simple burglary conviction, the state utilized fingerprints on an arrest booking sheet; no bill of information with prints was provided or used. He maintains that no evidence linked the arrest record to the bill of information and that the state failed to show that the person arrested was the same person subsequently convicted.
 

 To prove that a defendant is a habitual offender, the state, among other things, must establish by competent evidence, that there is a prior felony conviction and that the defendant is the same person who was convicted of that prior felony.
 
 State v. Chaney,
 
 428 So.2d 1092 (La.1982). The Louisiana Supreme Court has repeatedly held that La. R.S. 15:529(F) does not require the state to use a specific type of evidence to carry its burden at a habitual offender hearing and that prior convictions may be proved by any competent evidence.
 
 State v. Lindsey,
 
 1999-3302 (La.10/17/00), 770 So.2d 339. When proving at a habitual offender hearing that a defendant is the same person convicted in the earlier proffered predicate offenses, the state may accomplish this through different means, including the testimony of witnesses, expert testimony as to the fingerprints of the accused when compared to those in the prison record introduced or by photographs |n contained in the duly authenticated record.
 
 State v. Henry,
 
 42,416 (La.App.2d Cir.9/19/07), 966 So.2d 692,
 
 writ denied,
 
 2007-2227 (La.8/29/08), 989 So.2d 95.
 

 An arrest register containing the defendant’s fingerprints, when admitted with a bill of information, matching the name, arrest date and item number from the arrest register, may be used in lieu of a fingerprinted bill of information to prove a prior conviction by a defendant.
 
 State v. Lindsey, supra; State v. Breaux,
 
 00-236
 
 *916
 
 (La.App. 5th Cir.8/29/00), 767 So.2d 904, 909,
 
 writ denied,
 
 2000-2874 (La.6/29/01), 794 So.2d 808;
 
 State v. Cosey,
 
 2004-2220 (La.App. 4th Cir.7/13/05), 913 So.2d 150, 153-154.
 

 The state’s use of an arrest report containing the defendant’s fingerprint, in combination with certified minutes and a bill of information, was sufficient to prove that the defendant was the same person convicted of simple burglary in 1994.
 

 1985 Simple Burglary Conviction
 

 The defendant made a
 
 pro se
 
 assignment of error that the state failed to prove his 1985 conviction for simple burglary. He contends that the evidence produced by the state, a bill of information, did not prove that he was actually convicted of simple burglary; he asserts that the conviction was for attempted simple burglary.
 

 |1gThe state presented the testimony of a fingerprint expert that the prints he took from the defendant in open court matched those on the bill of information for the 1985 simple burglary conviction. The bill of information was admitted into evidence with a certified copy of the court minutes reflecting the conviction.
 
 [3]
 
 Therefore, the state submitted sufficient evidence to prove that the defendant was the same person who committed the 1985 simple burglary.
 

 Readjudication
 

 In a
 
 pro se
 
 assignment of error, the defendant claims that the trial court erred in not readjudicating him as a habitual offender. Failure to rule on post verdict motions, such as a motion for new trial or motion for post verdict judgment of acquittal, prior to sentencing constitutes error patent necessitating vacation of sentence.
 
 State v. Jackson,
 
 614 So.2d 783 (La.App. 2d Cir.1993). As a result, this court vacated the defendant’s sentence as a habitual offender; the actual adjudication was not vacated. Therefore, there was no reason to readjudicate the defendant as a habitual offender.
 

 These assignments of error have no merit.
 

 EXCESSIVE SENTENCE
 

 Defense counsel contends that the life imprisonment sentence imposed was excessive for this offender and this offense. Similarly, the defendant’s |
 
 mpro se
 
 assignment of error asserts that the trial court erred in failing to consider La. C. Cr. P. Art. 894.1 before imposing sentence.
 

 La. R.S. 15:529.1(A)(l)(C)(ii) provides the following for sentencing a person adjudicated a fourth felony offender:
 

 If the fourth felony and two of the prior felonies are felonies defined as a ... violation of the Uniform Controlled Dangerous Substances Law punishable by imprisonment for ten years or more, or of any other crime punishable by imprisonment for twelve years or more, or any combination of such crimes, the person shall be imprisoned for the remainder of his natural life, without benefit of parole, probation, or suspension of sentence.
 

 Thus, La. R.S. 15:529.1(A)(l)(c)(ii) mandated a life sentence without benefits for the defendant because he is a fourth felony offender. Two of the prior felonies were simple burglaries, which are punishable by imprisonment for 12 years under La. R.S. 14:62, while the present offense of distribution of marijuana is punishable by imprisonment of 5 to 30 years under La. R.S. 40:966(B)(3).
 

 
 *917
 
 Because the sentence imposed for the habitual offender adjudication is prescribed by statute, the trial court’s compliance with La. C. Cr. P. art. 894.1 is not required.
 
 State v. Gay,
 
 34,371 (La.App.2d Cir.4/4/01), 784 So.2d 714;
 
 State v. Lee,
 
 39,969 (La.App.2d Cir.8/17/05), 909 So.2d 672,
 
 writ denied,
 
 2006-0247 (La.9/1/06), 936 So.2d 195. It would be an exercise in futility for the trial court to discuss the factors enumerated in that article 114when the court had no discretion in sentencing the defendant.
 
 State v. Lee, supra.
 

 As this court stated in
 
 State v. Ponsell,
 
 33,543 (La.App.2d Cir.8/23/00), 766 So.2d 678, 685,
 
 writ denied,
 
 2000-2726 (La.10/12/01), 799 So.2d 490:
 

 Although ... the Louisiana Supreme Court stated that courts have the power to declare a mandatory minimum sentence excessive under Article I, Section 20 of the Louisiana Constitution, this power should only be exercised in rare cases and only when the court is firmly convinced that the minimum sentence is excessive. [Citations omitted.]
 

 Since the habitual offender law in its entirety is constitutional, the minimum sentences it imposes upon multiple offenders are also presumed to be constitutional.
 
 State v. Johnson,
 
 1997-1906 (La.3/4/98), 709 So.2d 672. The mandatory life sentences required are presumptively constitutional and should be accorded great deference by the judiciary.
 
 State v. Lee, supra.
 
 The burden was on the defendant to rebut the presumption that a mandatory minimum sentence is constitutional. In order to do so, it must be clearly and convincingly shown by the defendant that he is exceptional, which in this context means that because of unusual circumstances this defendant is a victim of the legislature’s failure to assign sentences that are meaningfully tailored to the culpability of the offender, the gravity of the offense, and the circumstances of the case.
 
 State v. Johnson, supra
 
 at 676.
 

 | ^Furthermore, a trial judge may not merely rely upon the nonviolent nature of the instant or past crimes as evidence which justifies rebutting the presumption of constitutionality. The lack of violence cannot be the only reason, or even the main reason, for declaring such a sentence excessive.
 
 State v. Lindsey, supra; State v. Lee, supra.
 

 The defendant has failed to rebut the presumption by showing that he is exceptional. The fact that his prior offenses were nonviolent is, by itself, insufficient.
 

 These assignments of error lack merit.
 

 LA. C. CR. P. ART. 782
 

 In a
 
 pro se
 
 assignment of error, the defendant maintains that La. C. Cr. P. art. 782(2) is unconstitutional because it allows a defendant to be convicted of a felony by a non-unanimous jury. In support of his argument, he cites
 
 Apodaca v. Oregon,
 
 406 U.S. 404, 92 S.Ct. 1628, 32 L.Ed.2d 184 (1972), and argues that the issue is unsettled because no majority prevailed on the United States Supreme Court regarding the constitutionality of non-unanimous verdicts in noncapital cases.
 

 The constitutionality of La. C. Cr. P. art. 782(A) has been consistently upheld by the Louisiana Supreme Court.
 
 State v. Bertrand,
 
 2008-2215 (La.3/17/09), 6 So.3d 738, 741-742;
 
 State v. Edwards,
 
 420 So.2d 663 (La. 1982);
 
 State v. Simmons,
 
 414 So.2d 705 (La.1982);
 
 State v. Jones,
 
 381 So.2d 416 (La.1980). Additionally, as explained in
 
 State v. Bertrand, supra,
 
 subsequent decisions by the United States Supreme Court have indicated that, although no majority emerged from the
 
 Apodaca
 
 case, the constitutionality of non-unanimous jury verdicts is well settled. See also
 
 State v. Malone,
 
 43,548 (La.App.2d Cir. 11/19/08),
 
 *918
 
 998 So.2d 322,
 
 writ denied,
 
 2009-0198 (La.10/30/09), 21 So.3d 275.
 

 This assignment of error is meritless.
 

 CONCLUSION
 

 The defendant’s conviction, adjudication as a fourth felony offender, and sentence are affirmed.
 

 AFFIRMED.
 

 APPLICATION FOR REHEARING
 

 Before STEWART, GASKINS, CARAWAY, DREW and MOORE, JJ.
 

 Rehearing denied.
 

 [1]
 

 .
 
 State v. Dorthey,
 
 623 So.2d 1276 (La.1993).
 

 [2]
 

 . A certified bill of information — without fingerprints — was also introduced for the 1994 conviction.
 

 [3]
 

 . We note that the minutes indicate that while the defendant pled guilty to simple burglary, one of his codefendants entered a plea to attempted simple burglary.