BROWN, C.J.
11 Defendant, Delanee Small, charged with one count of armed robbery, was convicted by a jury of a lesser and responsive charge of first degree robbery. The state filed a third-felony habitual offender bill. The trial court sentenced Small as a third felony offender to life imprisonment at hard labor without the benefit of parole.[1] Small has appealed both his conviction and sentence. We affirm.

Facts

On the afternoon of Augüst 24, 2014, Michael “Cade” Anderson, age 17, called a man named “Debo” to purchase some marijuana. Anderson and his friend, Michael Dunman, met Debo at the Citgo gas station on Line Avenue in Shreveport, La. Anderson gave Debo $20 and said he “wanted a gram (of marijuana).” Debo told Anderson that they had to go pick up the marijuana; so Debo and another man got into the back seat of Anderson’s car. Debo had Anderson drive down East 79th Street and stop at a dead end. When Anderson stopped the car, he saw that the other man had a silver revolver with a red grip. Debo advised Anderson that they had to go get the marijuana, and the two men got out of Anderson’s vehicle and entered a nearby house.
Upon their return, Debo and the other man got into Anderson’s car. At that point, Anderson noticed that Debo was now the person holding the gun. Debo took the gun , and pushed it against Anderson’s head, telling Anderson that he needed $1,000 “by the end of the hour or everybody was going to die.” Anderson gave “Debo” $60, Anderson’s' friend gave “Debo” 12$40, and Debo took three bottles of cologne, a. pair of Ray-Ban sunglasses and the. contents of a coin jar in Anderson’s car, After Debo and the other, man took the items, they told Anderson that it wasn’t enough and instructed Anderson to go to an ATM to withdraw money from his bank account. Anderson drove to the Community Trust Bank and tried to withdraw $500, but he only had a balance of $0.42.[2]
Debo took Anderson’s phone, got its password, and told Anderson to call everyone he knew to try to get $1,000. Anderson made a number of phone calls to friends in an effort to obtain the money, but was unsuccessful. Anderson testified that Debo told him that things were “about to get bad” if Anderson failed to get him the money and threatened to slit Anderson’s throat. Debo also threatened Anderson’s family. Anderson continued to drive around the Shreveport area until Debo told him to drive to the Mount Olive Baptist Church near Caddo Middle Magnet. When they arrived at the church, Debo and the other man used towels in Anderson’s car to wipe the car down, exited, the vehicle, got into a red Pontiac, and drove off. Anderson testified that Debo and the other man were in the car with Anderson for about an hour and 15 minutes.
Anderson then drove to Michael’s house and the two teens disclosed the events of the afternoon to Michael’s father, Jeffery Dunman. Mr. Dunman had Anderson call the police, and drove Anderson back to the Citgo to give a statement to officers.
*1132 | sAnderson provided the police with a description of Debo and the phone number Anderson used to call him. Police were able to match the Debo alias and phone number to Delance Small. Shreveport police subsequently arrested Small on September 4, 2014.
Small was charged by bill of information[3] with one count of armed robbery pursuant to La. R.S. 14:64. On February 9, 2015, the day that trial was to commence, the trial judge heard and ruled on a number of pretrial motions submitted by Small’s counsel which had been filed in September and October 2014 but had not been addressed prior to trial.

Prieur Motion & Hearing

As part of the hearings on the litany of pretrial motions, the trial court heard arguments on a Prieur motion. Small’s counsel argued that the defense was entitled to a La. C.E. art. 404(B) notice pursuant to State v. Prieur, 277 So.2d 126 (La.1973). Small requested that, because the state had not filed a La. C.E. art. 404(B) notice and no pretrial hearing had been held, the trial court should prohibit the state from presenting any La. C.E. art. 404(B) other crimes evidence at trial. In response, the state asserted that it did not file a Prieur notice because it had no intention of introducing any La. C.E. art. 404(B) evidence.
The trial court denied Small’s Prieur motion as moot. |4SmaIl’s counsel objected to the court’s ruling. Thereafter, there was some discussion about the exact parameters of the defense’s request for a La. C.E. art. 404(B) notice. The state appeared to be confused about what the defense counsel was asking for, and the following exchange ensued:
ADA Hill[4]: Your Honor, just to clarify, I’m not really sure what it is that Defense Counsel is asking for because he’s not being very specific.
McClatchey: Your Honor, I’m asking that the Court bar the State from producing any 404(B) evidence at trial.
ADA Prudhomme: ... I understand Mr. McClatchey’s motion. I understand his request. I also understand what 404(B) allows and does not allow. In this case ... it is my understanding that the victim (Anderson) in this case encountered the defendant prior to the date of the incident wherein which a (cell phone) number was exchanged. No other crimes were discussed, but implied. But there was no mention of it, there was no discussion of it. So if the previous encounter between the two individuals, is what Mr. McClatchey is directing this at, we just want the Court to be made aware of that when our victim takes the stand, he will say that he met the defendant prior to the date of the robbery, and the conversation that he did have, but that conversation does not involve any discussion of any other crime ...
COURT: Is that what you’re (defense counsel) asking?
*1133 MCCLATCHEY: No, Your Honor, Pm asking that the Court grant my motion and prohibit the State from putting on any 404(B). We have a right to that, and we request that the Court grant the- motion.
After this colloquy, the trial judge reiterated that she would deal with any “other crimes” evidence “if and when it comes up during the trial.”
15Small’s jury trial commenced on February 10, 2015. During Anderson’s testimony, he described the prior contact between him and Small:
ADA: How is it that you know this individual [Small]?
ANDERSON: I met him in July at the Raceway on East 70th Street. I walked out of the store and he was standing outside by a car and he stopped me and asked if I ever needed any marijuana to call him, and he gave me his number. And he had been texting me prior to August 24th (the date of the instant crime). .
ADA: And you said he texted you prior to that date. What did he text you?
ANDERSON: He would say, like, What up? What’s up, man? And then I wouldn’t reply. And then on August 24th I called him and talked to him.
Det. Turpén also testified as to Anderson’s prior contacts with Small:’
ADA: You indicated that jAnderson] told you he had went to [the Citgo] to purchase narcotics. Did [Anderson] say that he knew who he was purchasing these narcotics from? '
TURPEN: Yes. [Anderson] stated that he knew the subject by the name of Debo. He stated that he had made purchases from him before in the past and that he had a phone number that he could provide for me, and he just didn’t have the subject’s real name but he could identify him.
ADA: Were you able to match that alias to anyone?
TURPEN: Yes, I was.
ADA: Who did that alias match to?
TURPEN: Delance Small.
No objection was made to this line of questioning. The issue with this testimony was raised for. the first time on appeal. At the pretrial hearing Ron defendant’s Pri-eur motion, the ADA specifically asked what 404(B) evidence defense counsel was referring to and received no answer., The ADA responded that the state would used the above recounted testimony between the victim and defendant in July. The court then asked defense counsel if that was what he was referring to and counsel clearly stated no — he. was just making a general statement for the court to exclude any La. C.E. art. 404(B) evidence. ,
Louisiana law prohibits review of an error at trial unless it was objected to at the time of the occurrence of the error. La. C. Or. P. art. 841(A); State v. Thomas, 427 So.2d 428 (La.1982); State v. Grant, 41,745 (La.App.2d Cir.04/04/07), 954 So.2d 823, writ denied, 07-1193. (La.12/07/07), 969 So.2d 629. This “contemporaneous objection” rule serves two purposes: (1) to put the trial judge on notice of the alleged irregularity to allow him to cure the problem and (2) to. prevent a defendant from gambling for a favorable verdict and then later appealing-based on errors that could have easily been corrected by an objection at the time of the error. State v. Thomas, supra.
The contemporaneous objection requirement does not apply to a trial court’s ruling on a written motion. La. C. Cr. P. art. 841(B). However, appellate review of the trial court’s ruling is ■ limited to the subject of the written motion. See, e.g., *1134 State v. Butler, 30,798 (La.App. 2d Cir.06/24/98), 714 So.2d 877; State v. Lindsey, 12-1195 (La.App. 4th Cir.11/20/13), 129 So.3d 759, writ denied, 13-2993 (La.06/13/14), 140 So.3d 1186.
[7Even so, no violation occurred in the present case. La. C.E. art, 404(B), other crimes, wrongs or acts, provides in pertinent part:
(1) Except as provided in Article 412, evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, provided that upon request by the accused, the prosecution in a: criminal case shall provide reasonable notice in advance of trial, of the nature of any such evidence it intends to introduce at trial for such purposes, or when it relates to conduct that constitutes an integral part of the act or transaction that is the subject of the present proceeding. (Emphasis added).
Generally, evidence of other acts of misconduct is not admissible because it creates the risk that the defendant will be convicted of the present offense simply because the unrelated evidence establishes him or her as a “bad person.” La. C.E. art. 404(B)(1); State v. Jackson, 625 So.2d 146 (La.1993). This rule of exclusion stems from the “substantial risk of grave prejudice to the defendant” from the introduction of evidence regarding his unrelated criminal acts. State v. Prieur, supra.
Evidence of other crimes, wrongs or acts may be introduced when it relates to conduct that forms an integral part of the act or transaction — a matter which is logically relevant to the issues and forms part of the continuous course of the criminal transaction — that is. the subject of the present proceedings. La, C.E. art. 404(B)(1); State v. Colomb, 98-2813 (La.10/01/99), 747 So.2d 1074.
If the state intends to present La. C.E. art. 404(B) evidence, which would be admissible as an integral part of the act, the state is not required to provide the defendant with notice, nor is the trial court required to conduct a |sPrieur colloquy. La. C. Cr. P. art. 720; State v. Law, 45,435 (La.App.2d Cir.08/11/10), 46 So.3d 764.
This Court in State v. Law, supra, described the test for determining whether La. C.E. art. 404(B) evidence qualifies as an “integral act” as follows:
The test of integral act evidence is not simply whether the state might somehow structure its case to avoid any mention of the uncharged act or conduct, but whether doing so would deprive its case of narrative momentum and cohesiveness, with power not only to support conclusions, but to sustáin the willingness of jurors to draw the inference, whatever they may be, necessary to reach an honest verdict.
Anderson’s and Det. Turpen’s testimony explained to the jury how Anderson knew Small, got in contact with him, why he called him, and subsequently why Anderson got into a vehicle with him. It is clear that the witnesses’ statements were not introduced for the purpose of depicting Small as a drug dealer — or to accuse him of another “bad act” or crime — but merely to “complete the story of the crime on trial by proving its immediate context of happenings near in time and place.” State v. Brewington, 601 So.2d 656, 656-57 (La.1992).
The erroneous admission of “other crimes” evidence is subject to the harmless error analysis on appeal. State v. Bratton, 32,090 (La.App.2d Cir.06/16/99), 742 So.2d *1135 896; State v. Johnson, 94-1379 (La.11/27/95), 664 So.2d 94. Such error is harmless where the verdict is “surely unattributable to the error.” State v. McGee, 39,336 (La.App. 2d Cir.03/04/05), 895 So.2d 780; State v. Bratton, supra.
In the instant case, it is unlikely that the details provided by Det. Turpén and Anderson were more prejudicial than probative; the fact that | ¡Anderson had Small’s cell phone number for the purpose of contacting him to purchase marijuana was unlikely to alter the jury’s decision as to whether Small robbed Anderson at gunpoint. See, e.g., State v. White, 27,188 (La.App.2d Cir.08/23/95), 660 So.2d 515, writ denied, 95-3045 (La.04/25/97), 692 So.2d 1076, (police officer’s testimony- to having seen defendant .conduct what appeared to be drug transaction three days prior to the date of arrest was not prejudicial reference to other crimes of defendant, and was admissible as relevant to explain why officer returned to conduct an investigation, resulting in the arrest).
We find no error in the handling of the present case. Clearly, this evidence appropriately served to complete the story of the crime. In any event, the statements of Anderson and Det. Turpén constituted harmless error; the evidence presented at trial was more than adequate to find Small guilty of first degree robbeiy, and the jury’s verdict was “surely unattributable” to the information that Anderson had Small’s cell phone number for the purpose of contacting Small for marijuana.

Motion to Suppress Photographic Identification- and In-Court Identification

Small filed a pretrial motion to suppress the photographic identification and in-court identification. Small alleged that his photograph was atypical of the other photos in the line-up and unduly suggestive.
The state did.not introduce the six-person line-up at trial or refer to it during examination of the victim. Even if the line-up procedure was suggestive, Anderson’s reliability outweighs any potential suggestiveness. Hours after the crime occurred, Anderson made a statement to police, | mdescribing a black male, who was approximately 5'9" and wearing a white “wife beater” and jeans. Anderson told police that the suspect went by the name Debo and that Anderson had his phone number] Police were able to cross-reference the cell phone number to De-lance Small. Further, Anderson was in the vehicle with Small fór more than an hour.
Anderson made an in-court identification of Small as the person, who robbed .him. As such, Anderson was also available for cross-examination as to Small’s identity. The circumstances of this case negate any substantial likelihood of misidentification. State v. Goldston, 35,271 (La.App.2d Cir.12/05/01), 804 So.2d 141.
Based on the information and evidence available to the trial court, the trial judge did not abuse its discretion in denying Small’s motion to suppress the in-court identification.

Habitual Offender.Bill of Information

The state filed a habitual offender bill charging Small as a third-felony habitual offender based on the present charge and two prior felonies. On February, 24, 2011, Small was convicted, pursuant to a plea agreement, of one count .of aggravated burglary and one count of attempted armed robbery. Small filed a motion to quash the habitual offender bill of information.
At the hearing on the motion to quash, defense counsel argued that Small’s guilty plea for his-two previous felony convictions did not satisfy the requirements of Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 *1136 L.Ed.2d 274 (1969). Specifically, Small argued that his plea was not knowing and voluntary because there was no inquiry as to his education | nlevel or ability to understand. Small further argued that he was never told (a) he was pleading guilty to two felonies; (b) the plea could be used against him in the future in habitual offender adjudications; and (c) the minimum and maximum sentences for each of the felonies.
As to the prior convictions, the record shows that Small was charged by bill of information in Criminal Docket No. 289,-760 with one count of armed robbery and one count of aggravated burglary. Small was charged by bill of information in Criminal Docket No. 289,871 with one count of attempted armed robbery and one count of aggravated second degree battery. The state offered Small a plea deal which would allow him to plead guilty to one count of aggravated burglary and one count of attempted armed robbery in exchange for an agreed-upon sentence of five years with each count to be served concurrently.[5]
The two bills of information were entered into evidence by the state at the multiple offender hearing. The transcript of the guilty plea hearing was entered into evidence at the multiple offender hearing as Defendant’s Exhibit.
■ The trial court denied Small’s motion, finding that the Boykin colloquy was sufficient and that Small entered into the guilty plea freely and voluntarily. The court found that Small was a third-felony habitual offender.
The Louisiana Supreme Court adopted the federal constitutional standards set out in Boykin v. Alabama, supra, which requires that a guilty | i2plea be recorded and show that defendant was informed of and waived three specific federal constitutional rights. These rights are the privilege against compulsory self-incrimination, the right to trial by jury, and the right to confront one’s accusers. State v. Guzman, 99-1753 (La.05/16/00), 769 So.2d 1158, 1163, n. 4 (citing State ex rel. Jackson v. Henderson, 255 So.2d 85, 260 La. 90 (1971)).
The shifting burdens of proof in habitual offender hearings were set forth in State v. Shelton, 621 So.2d 769, 779-80 (La.1993), as follows:
If the defendant denies the allegations of the bill of information, the burden is on the State to prove the existence of the prior guilty pleas and that defendant was represented by counsel when they were taken. If the State meets this burden, the defendant has the burden to produce some" affirmative evidence showing an infringement of his rights or a procedural irregularity in the taking of the plea. If the defendant is able to do this, then the burden of proving the constitutionality of the plea shifts to the State. The State will meet its burden of proof if it introduces a “perfect” transcript of the taking of the guilty plea, one which reflects a colloquy between judge and defendant wherein the defendant was informed of and specifically waived his right to trial by jury, his privilege against self-incrimination, and his right to confront his accusers.
The test for the validity of a guilty plea does not depend upon whether or not the district court specifically informed the accused of every element of the offense. Rather, the defendant must establish that he lacked awareness of the essential nature of the offense to which he was pleading. State v. Forrest, 04-43 (La.App. 5th Cir.05/26/04), 876 So.2d 187. Violations of *1137 La. C. Cr. P. art. 556.1 that do not rise to the level of Boykin violations are subject to the harmless error analysis. State v. Ford, 02-1894 (La.App. 4th Cir.04/16/03), 846 So.2d 98, writ denied, 03-1401 (La.11/26/03), 860 So.2d 1132. The proper inquiry is whether the defendant’s knowledge and comprehension of the full and correct information would | iahave likely affected his or her willingness to plead guilty. State v. Kennedy, 42,850 (La.App.2d Cir.01/09/08), 974 So.2d 203.
There is no requirement that a guilty plea even be accompanied by the recitation of a factual basis for the crime. State v. Griffin, 633 So.2d 358 (La.App. 1st Cir.1993), writ denied, 94-0240 (La.10/14/94), 643 So.2d 157. “[T]he due process clause imposes no constitutional duty on state trial judges to-ascertain a factual basis prior to accepting a guilty plea.... Louisiana law, unlike, [federal law] has no statutory provision requiring accompaniment of a guilty plea by the recitation of a factual basis.” State v. Perry, 515 So.2d 654, 655 (La.App. 3d Cir.1987).
Any failure of the trial court to explore all of the possible ramifications of a future conviction does not affect the core Boykin rights and does not invalidate the offense as a predicate. State v. Roland, 49,660 (La.App.2d Cir.02/27/15), 162 So.3d 558. Trial courts need not advise defendants that a conviction may be used to enhance a subsequent sentence. State v. Welch, 45,950 (La.App.2d Cir.01/26/11), 57 So.3d 442, writ denied, 11-0423 (La.09/16/11), 69 So.3d 1145.
’ The record indicates that the trial court informed Small of his privilege against compulsory self-incrimination, right to trial by jury, and right to confront the witnesses against him. The record similarly indicates that Small understood his rights and waived them; •
Small’s prior guilty pleas to aggravated burglary and attempted armed robbery were knowingly and intelligently made. Any other flaws that occurred during the guilty plea hearing did not invalidate the pleas and were not reversible error. The trial court did not abuse its discretion in denying |;14Small’s motion to quash the habitual offender bill - of information and in subsequently finding Small to be a third-felony habitual offender.[6]

Sentencing

The court,first sentenced Small under La. R.S. 14:64.1, without the multi-bill, to serve 20 years’ at hard labor without the benefit of parole.[7] In support of the sentence, the court identified and discussed relevant La. C. Cr. P, art. 894.1 factors and in particular that Small was 22 years old.
The trial court vacated the 20-year sentence and proceeded to sentence Small under the habitual .offender law, which provides that if the third-felony and the *1138 two prior felonies are felonies defined as crimes of violence under R.S. 14:2(B) the person shall be imprisoned for the remainder of his natural life, without benefit of parole, probation, or suspension of sentence.
In sentencing Small to life without the benefit of parole, the court stated the following:
[The] Court did review in depth the case law citing La. R.S. 15:529.1, and did consider, because of Mr. Small’s age, whether the sentence imposed under the Habitual Offender Statute, which is a life sentence, may constitute excessive punishment. My research revealed that declaring a (legislated mandated) sentence constitutionally excessive should be a rare act .... [and] should be done only in those rare [^instances where there is clear and convincing evidence to rebut the presumption of constitutionality. There has been no showing by the defendant to establish that his case is exceptional," and the' Court specifically finds that it is not exceptional. The purpose of the Habitual Offender Statute is to deter and punish repeat offenders. Mr. Small has already been convicted of three crimes of violence, and the Court concludes that he is the type of defendant that the Habitual Offender Statute was designed for.
Small argues that his sentence' of life at hard labor without the benefit of parole is constitutionally excessive. Defense counsel argues that imprisoning Small for life without parole does not satisfy any of the purposes for which a life sentence for repeat offenders was constructed. Furthermore, Small’s counsel argues that Small is exceptional insofar as he is a young adult and committed the two prior felonies when he was barely 18 years of age.
A sentence violates La. Const, art. I § 20 if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless infliction of pain and suffering. A sentence is grossly disproportionate if, when the .crime and punishment are viewed in light of the harm to society, it shocks the sense - of • justice. State v. Weaver, 01-0467 (La.01/15/02), 805 So.2d 166; State v. Bradford, 29,519 (La.App.2d Cir.04/02/97), 691 So.2d 864.
The minimum sentences mandated by the habitual offender law-are presumed to be constitutional. State v. Johnson, 97-1906 (La.03/04/98), 709 So.2d 672. The legislature’s determination of an appropriate minimum sentence should be afforded great deference by the judiciary. State v. Capers, 43,743 (La.App.2d Cir.12/3/08), 998 So.2d 885, writ denied, 09-0148 (La.10/02/09), 18 So.3d 102. Courts have the power to- declare a | ](¡sentence excessive under La. Const, art. I, § 20 although it falls within the statutory limits provided'by the legislature; however, this power should be exercised only if the court finds that there is clear and convincing evidence in the particular case before it which would rebut this presumption of constitutionality, State v, Johnson, supra; State v. Lindsey, 99-3302 (La.10/17/00), 770 So.2d 339.
Small’s criminal record shows that he was released on “GTPS” (good time/parole supervision) on June 18, 2014, after serving more than 46 months of his 60-month (five-year) concurrent sentences. His supervised release would have expired on August 15, 2015. Based on the record, it appears that Small was on parole when the instant crime occurred.
We do not find this sentence for a third crime of violence to be shocking to a sense of justice nor has it been shown that, defendant’s circumstances are exceptional.
*1139 We affirm Small’s convections and sentences, , ,

. Small was also ordered to pay $150 to the North Louisiana Crime Lab.

. The trial testimony indicates that Shreveport police obtained a video .from the surveillance camera at the ATM of the Community Trust Bank, but were unable to identify the two men in the back seat of Anderson’s vehicle because the men obscured their faces.

. Small was originally charged under Criminal Docket No. 326,287 with two counts of armed robbery. No. 50,389-KA. The state entered an amended bill of information, which eliminated the second count of armed robbery, and it was lodged as Criminal Docket No. 329,926. After sentencing, Small’s counsel sought an appeal on both Criminal Docket No. 326,287 and Criminal Docket No. 329,926. Because the original bill of information of September 17, 2014, was superseded by the amended bill of February 9, 2015, this court dismissed the appeal lodged as No. 50,389-KA and designated the record as an exhibit in No. 50,388-KA.

. Treneisha Hill and Geya Prudhomme appeared as counsel for the state.

. These charges were in Caddo Parish, First Judicial District Court.

. Small argues in his pro se brief that the . state’s assertion at the conclusion of. the February 24, 2011, guilty plea hearing is evidence of an "ambiguous" charge. The lánguage referred to as an unauthorized entering is related to the factual predicate for the aggravated burglary charge. Aggravated burglary is the unauthorized entering of any inhabited dwelling, where a person is present, with the intention to commit a felony or any theft therein. Based on the record and the number of times the trial court reiterated that Small was pleading guilty to aggravated burglary, it is rather unlikely that Small’s charge was ambiguous.

. R.S. 14:64.1. provides that “[W]hover commits the crime of first degree robbery shall be imprisoned at hard labor for not less than three years'and for not more than forty years, without benefit of parole, probation or suspension of' imposition or execution of sentence.”