STONE, J.
jjThe defendant, Richard Wayne Mosely, was charged by bill of information with attempted first-degree murder in violation of La, R.S. 14:27 and 14:30. Following a jury trial, Mosely was found guilty as charged. The trial court adjudicated Mosely a fourth-felony offender and sentenced him to life imprisonment without the benefit of probation or suspension of sentence. For the following reasons, we affirm Mosely’s conviction and amend his life sentence at hard labor to be served without benefit of probation, parole, or suspension of sentence.
FACTUAL AND PROCEDURAL HISTORY
On January 11, 2014, at approximately 2:00 a.m,, Nekedra Mosely ,(“Nekedra”) re *163 turned home to her apartment at Southern Oaks: Apartments in Shreveport, Louisiana, Before exiting her vehicle to go inside, Nekedra called Shreveport Police and asked if an officer could come canvass the apartment complex to see if her estranged husband, Richard Mosely (“Mosely”), was waiting for her in the parking lot. Nekedra was informed that an officer would arrive shortly and she preceded to her apartment.
Once inside, Nekedra heard knocking on her window and saw Mosely standing outside. He asked her to let him in, but Nekedra refused and called 911. Mosely then kicked in Nekedra’s front door. The door frame was splintered with the door chain still intact. As Nekedra struggled to push the door shut, Mosely reached inside and slashed Nekedra’s throat with a box cutter. Mosely then entered her apartment and proceeded to use the box cutter to continue to inflict numerous' deep lacerations to Nekedra’s face, ear, arms, upper torso, and hands. Nekedra was able to escape her apartment and seek refuge in the apartment of her | .¿.downstairs neighbor until police arrived. Nekedra was transported to the hospital and, despite suffering massive blood loss, survived the attack.
Mosely was charged by bill of information with the attempted first-degree murder of Nekedra. Following a two-day jury trial, Mosely was found guilty as charged. The state subsequently filed a habitual offender bill of information charging Mosely as a fourth-felony habitual offender. In turn, Mosely moved to quash the habitual offender bill, arguing the state had not proved his commission of the predicate offenses.
Additionally, Mosely filed a motion for new trial and a motion for post-verdict judgment of acquittal. The trial court denied Mosely’s motions and adjudicated him a fourth-felony habitual offender. Mosely was sentenced to life imprisonment without the benefit of probation or suspension of sentence. Mosely subsequently filed a motion to reconsider the sentence, arguing it was unconstitutionally harsh and.excessive. The trial court denied the motion. Mosely now appeals. .. ■
DISCUSSION •
Motion for New Trial
In his first assignment of error, Mosely argues the trial court erroneously denied his motion for new trial. In particular, he asserts three reasons why the motion should have been granted: (1) tHe trial court improperly denied his request for five jury instructions related to eyewitness identification; (2) the trial court improperly allowed-the state to elicit hearsay evidence during trial; and (3) the trial court improperly allowed testimony from Neke-dra that constituted inadmissible other crimes evidence against Mosely.
La. C. Cr. P. art. 851 sets forth the grounds for granting a new trial:
|SA. The motion for a new trial is based on the supposition that injustice has been done the defendant, and, unless such is shown to have been the case the motion shall be denied, no matter upon what allegations it is grounded. .
B. The court, on motion of the defendant, shall grant a new trial whenever any of the following occur:
(1) The verdict is contrary to the law and the evidence;
(2) The court’s ruling on a written motion, or an objection made during the proceedings, shows prejudicial error;
(3) New and material evidence that, notwithstanding the exercise of reasonable diligence by the defendant, was not discovered before or during the trial, is available, and if the evi *164 dence had been introduced at the trial it would probably have changed the verdict or judgment of guilty;
(4) The defendant has discovered, since the verdict or judgment of guilty, a prejudicial error or defect in the proceedings that, notwithstanding the exercise of reasonable diligence by the defendant, was not discovered before the verdict or judgment; or
(5) The court is of the opinion that the ends of justice would be served by the granting of a new trial, although the defendant may not be entitled to a new trial as a matter of strict legal right.
The trial judge has much discretion in ruling on a motion for a new trial and, upon review, an' appellate court may only set aside the judgment upon a finding that the trial judge exercised his discretion in an arbitrary manner. State v. Hammons, 597 So.2d 990 (La. 1992); State v. Lewis, 2005-0973 (La. App. 4 Cir. 05/24/06), 943 So.2d 1100, writ denied, 2006-1621 (La. 03/09/07), 949 So.2d 437.

Jury Instructions

Mosely claims the trial court should have included his special jury charges concerning eyewitness identification in the jury instructions because the evidence presented at trial was inadequate to prove he was the individual who assaulted Nekedra. Mosely asserts Nekedra’s statement that he was the person who attacked her, was unreliable given her intoxication at the time of the attack.
Prior to trial, Mosely proposed the following special jury charges regarding identification:
I ¿PROPOSED JURY INSTRUCTION NUMBER 1;
When the key issue in the case is identification, the State is required to negate any reasonable probability of misidenti-fication in order to carry its burden of proof. State v. Bright, 98-0398 (La. 04/11/00), 776 So.2d 1134, 1147.
PROPOSED JURY INSTRUCTION NUMBER 2:
A five-factor test for testing the reliability of an identification was enunciated in Neil v. Biggers, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972):
(1) the witness’ opportunity to view the assailant at the time of the crime;
(2) the witness’ degree of attention;
(3) the accuracy of the witness’ prior description of the assailant;
(4) the witness’ demonstrated level of certainty; and
(5) the time lapse between the crime and the confrontation.
PROPOSED JURY INSTRUCTION NUMBER 3:
The issue of the admissibility of expert testimony eyewitness identification is not a new issue for the Louisiana Supreme Court. Rather, it is undisputed that the admissibility of expert testimony on eyewitness identification has been uniformly barred by this Court on the occasions the issue has been raised. State v. Young, 09-1177 (La. 4/5/10), 35 So.3d 1042, 1047.
PROPOSED JURY INSTRUCTION NUMBER 4:
A major factor contributing to the high incidence of miscarriage of justice from mistaken identification has been the degree of suggestion inherent in the manner in which the prosecution presents the suspect to witnesses for pretrial identification. United States v. Wade, 388 U.S. 218, 228, 87 S.Ct. 1926, 1933, 18 L.Ed. 2d 1149 (1967).
PROPOSED JURY INSTRUCTION NUMBER 5:
*165 “The vagaries of eyewitness.identification are well-known; the annals of criminal law are rife-with instances of mistaken identification.” United States v. Wade, 388 U.S. 218, 228, 87 S.Ct. 1926, 1933, 18 L.Ed.2d 1149 (1967).
The trial court denied the recitation of Mosely’s special charges to the jury but did relate the following pertinent charges to the jury:
In order to prove guilt beyond a reasonable doubt the State must prove that Mosely is the perpetrator of the crime. It is your duty to determine the weight and credibility of the evidence. You may take into consideration the probability or improbability of the statements ■ of the witnesses, their opportunities for knowledge- of the facts to which they testify, their reliability in noting and remembering facts, their demeanor on the stand, the interest or lack of interest they have shown in the case and every circumstance surrounding the 1 Bgiving of their testimony which may aid you in weighing their statements. If you believe that any witnesses in the case have willfully and deliberately testified falsely to any material fact for the purpose of deeeiv-'ing you, then you are justified in disregarding the entire testimony of such witness as proving nothing and as not worthy of belief. You have the right to accept as true or reject as false the testimony of any witness in whole or in part as you are impressed with his truthfulness.
The trial court found that Mosely’s proposed special jury charges were more suitable to a case where the victim or eyewitnesses did not know the perpetrator, unlike in Mosely’s case. The trial court also determined the second proposed jury instruction, containing the five-factor test, was more appropriate for a case where a lineup or identification procedure was used; The- trial court explained that Mosely’s proposed instructions were “a little bit too specific” and nearly constituted a comment on the evidence.
La. C. Cr. P. art. 807 provides:
The state and the defendant shall have the right before argument to submit to the court special written charges for the jury. Such charges may be received by the court in its discretion after argument has begun. The party submitting the charges shall furnish a copy of the charges to the other party when the charges are submitted to the court. A requested special charge shall be given by the court if it does not require qualification, limitation, or explanation, and if it is wholly correct and pertinent. It need not be given if it is included in the general charge or in another special charge to be given.
Errors in jury instructions are subject to the harmless error analysis. The failure to give a requested jury instruction constitutes reversible error only when there is a miscarriage of justice, prejudice to the substantial rights of the accused, or a substantial violation of a constitutional or statutory right. State v. Tate, 01-1658 (La. 05/20/03), 851 So.2d 921, cert. denied, 541 U.S. 905, 124 S.Ct. 1604, 158 L.Ed. 2d 248 (2004); State v. Tucker, 49,950 (La. App. 2 Cir. 07/08/15), 170 So.3d 394.
|fiNekedra testified that on the night in question, her shift at her place of employment ended at 11:15 p.m., and she and three coworkers went to a casino where she gamed and consumed alcoholic beverages. The group left the casino sometime around 1:00 a.m. Nekedra claimed she was fine to drive home and arrived at her apartment complex around 2:00 a.m. While walking up the stairs of her apartment complex, Nekedra saw Mosely walking toward her. Once inside her apartment, *166 Nekedra. heard knocking on the window and saw Mosely. Nekedra called 911. A recording of her 911 call was played in open court. In the recording, Nekedra can be heard telling the operator that Mosely was outside her door and that she needed the police to come to her apartment. After Mosely kicked in Nekedra’s door and began attacking her, Nekedra placed a second 911 call. That recording was also played for the jury and Nekedra can be heard saying, “Richard, please” and “Richard, stop.”
Shreveport Police Officer Colby Moss (“Officer Moss”) was the first police officer to arrive at the scene. Officer Moss made contact with Nekedra and explained that, based on her injuries, he believed she was dying. He asked her who had attacked her and she responded that hér husband, Mosely, was responsible for her injuries.
Shreveport Police Detective Chad Dailey (“Detective Dailey”) testified that because Nekedra told Officer Moss that her husband attacked her, a fact which was corroborated by Nekedra’s neighbor, Jeremiah Pennington (“Pennington”), he did not feel he needed to show either Nekedra or Pennington a photographic lineup to identify the perpetrator. Detective Dailey spoke with Nekedra about a month after the attack when she was released from the hospital and she again stated Mosely was the person who attacked her.
|7Pr. Britni Teal-tenard (“Dr. Teal-te-nard”), the emergency room physician who treated Nekedra when she arrived at the hospital, testified that she ordered a toxicology screening on Nekedra. The screening indicated Nekedra had a blood-alcohol level of .113. Dr. Teal-tenard explained that a .113 blood-alcohol level, depending on the person, would have a-depressant effect, but “not to the point that they don’t know what’s happening in their surroundings.” The toxicology results also indicated Nekedra had cocaine metabolites in her system. However, the presence of cocaine metabolites in Nekedra’s urine did not necessarily indicate Nekedra had recently ingested cocaine, but would indicate ■ she ingested cocaine within the last three days. Dr. Teal-tendard opined that the cocaine, a stimulant, may have actually somewhat counteracted the effects of the alcohol and heightened Nekedra’s senses.
Despite Nekedra’s toxicity at the time of the incident, her identification of Mosely as the perpetrator was bolstered by several other witnesses’ identification of Mosely. Pennington, Nekedra’s downstairs. neighbor, testified that on January 11, 2014, at around 2:00 a.m., he heard a loud sound come from upstairs. Pennington went outside, looked up toward Nekedra’s second-story apartment,, and .saw Mosely and Nekedra at her door. Nekedra told Mosely to get out and Mosely told Pennington that someone had kicked in the door. Pennington returned to his apartment and called the police. Pennington went back outside just in time, to see Mosely run past his door, their eyes locking as Mosely passed. Nekedra then slowly came down the stairs, holding the railing and asking Pennington to help her. He recalled she, was wet with blood and had cuts all over her body. Pennington provided police with a photograph of Mosely that was retrieved from Pacebook. Pennington confirmed the photograph -was of Mosely and that Mosely was the person he saw attacking Nekedra.
IsDominic Baker (“Baker”) testified that he lived across the courtyard from Neke-dra. on the morning of the attack. At approximately 2:00 a.m., he heard a woman screaming so he looked out his window. He recalled seeing a woman on her knees screaming as a man stood over her swinging his arms. He could not see the man’s face. Baker went back inside to get his shoes and when he came back out, the man *167 was coming down the stairs. Baker testified that he and the man made eye contact for a brief moment. Baker remembered seeing Mosely in the apartment complex before and identified Mosely in open court as the man he saw attacking Nekedra.
After a review of the record, we find the trial court did not abuse its discretion in denying Mosely’s special jury charges. The trial court’s jury charges sufficiently advised the jury regarding the state’s burden of proving that Mosely was the person who attacked Nekedra and adequately informed the jury of its duty to consider the credibility of each of the state’s witnesses, including “their reliability in noting and remembering facts.” Nonetheless, even if the trial court’s actions with regards to the special jury charges could be construed as error, any such error is harmless in light of the overwhelming evidence of Mosely’s guilt.

Hearsay

Mosely argues the trial court allowed the state to elicit inadmissible hearsay evidence in the form of statements made by Baker.[1]
| (¡Hearsay is an oral or written assertion, other than one made by the de-clarant while testifying at the present trial or hearing, offered in evidence to prove the truth of the matter asserted. La. C.E. art. 801(A)(1) and (C). Hearsay evidence is not admissible, except as otherwise provided by the Code of Evidence or other legislation. La.. C.E. art. 802; State v. Wade, 39,797 (La. App. 2 Cir. 08/09/05), 908 So.2d 1220, writs denied, 06-0109, 06-0148 (La. 06/02/06), 929 So.2d 1251. Hearsay is excluded because the value of the statement rests on the credibility of the out-of-court asserter, who is not subject to cross-examination and other safeguards of reliability. State v. Martin, 458 So.2d 454 (La. 1984); Wade, supra.
Where , an investigating officer testifies concerning events leading to the arrest of a defendant, statements made to him by others during the course of the investigation are not hearsay, if they are not offered for the truth' of the matter asserted, but merely to explain the officer’s actions. State v. McNair, 597 So.2d 1096 (La. App. 2 Cir. 1992), writ denied, 605 So.2d 1113 (La. 1992). In othdr words, where the officer does not testify with regard to the substance of what another person told him, but with regard to what he did in response to that information, the testimony is not considered hearsay. State v. Lloyd, 48,914 (La. App. 2 Cir. 01/14/15), 161 So.3d 879, writ denied, 15-0307 (La. 11/30/15), 184 So.3d 33, recon. denied, 15-0307 (La. 02/19/16), 186 So.3d 1176, cert. denied, - U.S. -, 137 S.Ct. 227, 196 L.Ed. 2d 175 (2016).
However, the fact that an officer acted on information obtained during the investigation may not be used as an indirect method of bringing before the jury the substance of the out-of-court assertions *168 of the defendant’s guilt that would otherwise be barred by the hearsay rule. State v. Broadway, 96-2659 (La. 10/19/99), 753 So.2d 801, cert. denied, 529 U.S. 1056, 120 S.Ct. 1562, 146 L.Ed. 2d 466 (2000). Nevertheless, the erroneous admission of hearsay evidence does not require a reversal of the defendant’s conviction if the error is harmless beyond a reasonable doubt. Reversal is mandated only when there is a reasonable possibility that the hearsay evidence might have contributed to the verdict. State v. Wille, 559 So.2d 1321 (La. 1990); State v. Lloyd, supra.
At trial, Officer Tillmon testified that he responded to Southern Oaks Apartments on January 11, 2014, to help investigate a stabbing. Officer Tillmon was tasked with canvassing the area for witnesses when he came into contact with Baker. When asked by the prosecutor what Baker told him during the course of his investigation, Mosely objected on grounds that Baker’s statement constituted hearsay. The trial court overruled Mosely’s objection, explaining that since Baker would be testifying at trial he would be subject to cross-examination and the rules of impeachment.
Officer Tillmon went on to testify that Baker said he lived across the apartment complex courtyard from Nekedra. On the night Nekedra was assaulted, Baker saw a black male, identified only by the last name “Mosely” pushing and hitting a female. He later observed the black male, dressed in all black, fleeing the scene.
We find the trial court had a reasonable basis for concluding Baker’s out-of-court statement did not constitute inadmissible hearsay. Officer Tillmon interviewed Baker as part of the investigation into Nekedra’s attempted murder. Baker’s description of the man who assaulted Nekedra undoubtedly assisted police in their investigation. Baker was called as a witness by the state and was subject to cross-examination by the defense. Baker admitted at trial that he denied knowledge of the identity of the man he saw attacking Nekedra in his initial [^recorded statement to the police and was given the opportunity to clarify the differences in his statements. Notwithstanding, whether the state’s elicitation of Baker’s statement to Officer Tillmon at trial was done for the purpose of explaining the actions of police, or to prove Mosely’s identity, any error in the admission of Baker’s out-of-court statement was harmless considering the overwhelming testimony that Mosely was the offender.

Other Crimes Evidence

Mosely asserts the trial court erred by allowing the state to present other crimes or bad acts evidence without providing prior notice of its intention to do so. Specifically, Mosely cites Nekedra’s testimony that Mosely had called her repeatedly on January 10, 2014, harassing and threatening her. Mosely also points to Nekedra’s testimony that she had previously filed several police reports on Mosely-
In order to preserve an issue for appellate review, a party must state an objection contemporaneously with the occurrence of the alleged error, as well as the grounds for the objection. La. C. Cr. P. art. 841(A). It is well established that a defendant is limited to the grounds for objection articulated at trial and a new basis for an objection may not be raised for the first time on appeal. State v. Delaney, 42,990 (La. App. 2 Cir. 02/13/08), 975 So.2d 789.
La. C.E. art. 404(B) provides, in pertinent part:
(1) Except as provided in Article 412, evidence of other crimes, wrongs, or acts is not admissible to prove the character *169 of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, of the nature of any such evidence it intends to introduce at trial for |12such purposes, or when it relates to conduct that constitutes cm integral part of the act or transaction that is the subject of the present proceeding.
(Emphasis added.)
Generally, evidence of other acts of misconduct is not admissible because it creates the risk that the defendant will be convicted of the present offense simply because the unrelated evidence establishes him or her as a “bad person.” La. C.E. art. 404(B)(1); State v. Jackson, 625 So.2d 146 (La. 1993). This rule of exclusion stems from the “substantial risk of grave prejudice to the defendant” from the introduction of evidence regarding his unrelated criminal acts. State v. Prieur, 277 So.2d 126 (La. 1973).
Evidence of other crimes, wrongs, or acts may be introduced when it relates to conduct that forms an integral part of the act or' transaction—a matter which is logically relevant to the issues and forms part of the continuous course of the criminal transaction—that is the subject of the present proceedings. See La. C.E. art. 404(B)(1); State v. Colomb, 98-2813 (La. 10/01/99), 747 So.2d 1074. If the state intends to present La. C.E. art. 404(B) evidence, which would be admissible as an integral part of the act, the state is not required to provide the defendant with notice, nor is the trial court required to conduct a Prieur colloquy. La. C. Cr. P. art. 720; State v. Small, 50,388 (La. App. 2 Cir. 02/24/16), 189 So.3d 1129, 1134, writ denied, 16-0533 (La. 03/13/17), 212 So.3d 1158.
At trial, during the playing of one of Nekedra’s recorded 911 calls, she could be heard telling the 911 operator that Mosely had been threatening her. After the recording was over, the prosecutor asked Nekedra about the threats she received. The defense did not object to the question and Nekedra explained that “Mosely just kept calling, threatening me, and saying all kind lisof stuff.” Later, the prosecutor again asked Nekedra about any communications she had with Mosely the night before the attack. The defense did not object to the question and Nekedra testified that on the day before the incident, Mosely called her approximately 18 times and text messaged her. During one of the calls Nekedra told Mosely that their relationship was over and to stop calling. When the prosecutor asked Nekedra what Mosely’s reaction was, the defense lodged an objection arguing that Mosel/s statement constituted hearsay. The trial court overruled the objection and Nekedra answered the question, explaining that Mosely reacted to her rejection by telling her, “Bitch, you won’t see daylight.”
During cross-examination, counsel for Mosely asked Nekedra if she and Mosely fought frequently and whether she would typically fight back. Nekedra responded affirmatively to both questions. On redirect, the prosecution, referencing defense counsel’s earlier questioning, asked Neke-dra about the prior fights between herself and Mosely. Nekedra responded that she had “several police reports” on Mosely and that Mosely had injured her before. The defense did not object to the question.
We find that Mosely failed to preserve this issue for appeal. Mosely’s coun *170 sel never objected to the use of Nekedra’s 911 calls or the state’s questioning of her on grounds that either would impermissi-bly allow the introduction of other crimes or bad acts evidence in contravention of La. C.E. art. 404(B). Notwithstanding this fact',' evidence of Mosely’s threatening phone calls hours before the attack was admissible under La. C.É. art. 404(B) to show Mosely’s continuous course of conduct in carrying out the attempted murder of Nekedra. As a result, the state was not required 114to give Mosely Prieur notice of its intention to use the prior actions or threats leading up to the horrendous attack.
Based on the above findings and in light of the overwhelming evidence supporting Mosely’s conviction of attempted 'first-degree murder, the jury’s verdict is not contrary to the law and evidence, as required to justify the granting of a motion for new trial in this case. Moreover, considering the 11-1 guilty verdict, it does not appear that any error committed by the trial court tainted the jury. Accordingly, we find there was ■ no abuse of discretion in the trial judge’s denial of the motion for new trial.
Excessive Sentence
Mosely claims his sentence is excessive in light of his prior criminal record. Mosely acknowledges Nekedra suffered severe injuries and was forced to undergo several surgeries, but notes she survived the incident with minor permanent physical injuries.
The test imposed by the reviewing court in determining the exces-siveness of a sentence is two-pronged. First, the record must show that the trial court took cognizance of the criteria set forth in La. C. Or. P. art. 894.1. The trial court is not required to list every aggravating or mitigating , circumstance so long ¡as the record reflects that it adequately considered the guidelines of the article. State v. Smith, 483 So.2d 688 (La. 1983); State v. Watson, 46,572 (La. App. 2 Cir. 09/21/11), 73 So.3d 471. The articulation of the factual basis for a sentence is the goal of La. C. Or. P. art. 894.1, not rigid or mechanical compliance with its provisions. Where the record clearly shows an adequate factual basis for the sentence imposed, remand is unnecessary even where there has not been full compliance with La. C. Cr. P. art. 894.1. State v. Lanclos, 419 So.2d 475 (La. 1982); State v. Swayzer, 43,350 (La. App. 2 Cir. 08/13/08), 989 So.2d 267, writ denied, 08-2697 (La. 09/18/09), 17 So.3d 388.
The second portion of the test requires that a determination be made regarding the constitutional excessiveness of a sentence. A sentence violates La. Const, art. I, § 20, if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless and needless infliction of pain and suffering. State v. Smith, 01-2574 (La. 01/14/03), 839 So,2d 1; State v. Dorthey, 623 So.2d 1276 (La. 1993); State v. Bonanno, 384 So.2d 355 (La. 1980). A sentence is considered grossly disproportionate if, when the crime and punishment are viewed in light of the harm done to society, it shocks the sense of justice. State v. Weaver, 01-0467 (La. 01/15/02), 805 So.2d 166; State v. Washington, 46,568 (La. App. 2 Cir. 09/21/11), 73 So.3d 440, writ denied, 11-2305 (La. 04/27/12), 86 So.3d 625.
As a general rule, maximum or near maximum sentences are reserved for the worst offenders and the worst offenses. State v. Williams, 48,525 (La. App. 2 Cir. 11/20/13), 128 So.3d 1250.
The trial judge is given wide discretion in the imposition of sentences within the statutory limits, and the sentence imposed should not be set aside as exces *171 sive in the absence of a manifest abuse of that discretion. State v. Williams, 03-3514 (La. 12/13/04), 893 So.2d 7; State v. Diaz, 46,750 (La. App. 2 Cir. 12/14/11), 81 So.3d 228.
As a fourth-felony offender, Mosely was subject to a sentence of not less than 50 years, nor more than life imprisonment at hard labor without the benefit of parole, probation, or suspension of sentence. La. R.S. 14:27; La. R.S. 14:30; La. R.S. 15:529.1. Mosely asked for leniency based on his age, 39 years old, and his willingness to rehabilitate himself.
11 fiRefore imposing Mosely’s sentence, the trial court noted its review of the sentencing factors enumerated in La. C. Cr. P. art. 894.1 and determined the following factors applied: (1) Mosely’s conduct manifested deliberate cruelty to his victim; (2) Mosely used violence to carry out his crime; (3) the offense resulted in significant permanent injury and economic loss to his victim; and (4) Mosely used a dangerous weapon in the commission of his offense. The trial court found Mosely’s actions to be especially heinous given the previous relationship between Mosely and Nekedra.
Nekedra gave an emotional statement to the trial court detailing the extent of her injuries and impact of Mosely’s actions on her life. Nekedra described her hospital stay following the attack, the physical and psychological trauma she continues to suffer as a result of the assault, and the scars to her face, neck, and arms that persist as a constant reminder of what Mosely did to her. Nekedra takes depression and anxiety medication, and is under the care of a psychiatrist. She suffers permanent nerve damage to her head and hand as a result of the lacerations she sustained.
The trial court sentenced Mosely to life imprisonment without the benefit of probation or suspension of sentence, stating the following:
The Court has made a considered review of the record in this case, a considered review of the evidence, and I find that this is one of the worst, most personal offenses inflicted against another person in my fairly substantial history of dealing with crimes of violence as a lawyer and as a judge. And I do find that based on Mosely’s criminal history in conjunction with the gravity of those offenses that the constitutionally exceptional remedy and sanction of the maximum possible sentence is appropriate in this case.
We find the record supports Mosely’s sentence of life imprisonment. The trial court detailed applicable aggravating factors in support of the sentence. Despite the fairly benign nature of Mosely’s predicate offenses, |17the horrifying details of Mosely’s attempt to murder his wife by repeatedly slashing her body with a box cutter support the trial court’s characterization of Mosely as one of the worst offenders. As such, considering the nature of the crime and the horrendous injuries inflicted upon Nekedra, the life sentence does not shock the sense of justice.
ERROR PATENT
A review of the record reveals one error patent. The trial court sentenced Mosely to life imprisonment at hard labor without the benefit of probation or suspension of sentence. However, Mosely’s sentence also should have been imposed without the benefit of parole.
La. R.S. 14:27 (D)(1)(a) provides:
If the offense so attempted is punishable by death or life imprisonment, he shall be imprisoned at hard labor for not less than ten nor more than fifty years without benefit of parole, probation, or suspension of sentence.
*172 Additionally, La. R.S. 15:574.4 (A)(1) provides, in part, “A person convicted of a third or subsequent felony offense shall not be eligible for parole.”
Consequently, we order Mosely’s life sentence at hard labor be served without the benefit of probation, parole, or suspension of sentence. The trial court minutes should be amended to reflect this adjustment of Mosely’s sentence.
^CONCLUSION
For the aforementioned reasons, Mosely’s conviction is affirmed. His sentence is amended to life without the benefit of probation, parole, or suspension of sentence and, as amended, affirmed.
CONVICTION AFFIRMED; SENTENCE AMENDED AND, AS AMENDED, AFFIRMED.

. Mosely also alleged the trial court allowed inadmissible hearsay statements made by Lakebra Hart, another one of Nekedra’s neighbors. On March 25, 2015, Mosely filed a motion in limine requesting that the trial court issue an order prohibiting the state or its witnesses from making mention at trial of. a statement given by . Hart wherein she told police that an unknown witness told her that Mosely had attacked Nekedra approximately one week before the January 11, 2014 assault. Mosely asserted the statement constituted inadmissible other crimes evidence and was also hearsay, Prior to trial, the trial court granted the'motion for lack of foundation and failure of the state to provide Prieur notice of its intention to use the evidence .at Mosely’s trial. Hart did not testify at trial and the prior attack was never mentioned at Mosely’s trial. We therefore pretermit any discussion on allegations made by Mosely concerning Hart’s statement.