Judgment rendered July 16, 2025.
Application for rehearing may be filed
within the delay allowed by Art. 922,
La. C. Cr. P.

No. 56,320-KA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

STATE OF LOUISIANA                              Appellee

versus

ZHANE QUINN PERSLEY                             Appellant

* * * * *

Appealed from the
First Judicial District Court for the
Parish of Caddo, Louisiana
Trial Court No. 388,127

Honorable Donald E. Hathaway, Jr., Judge

* * * * *

LOUISIANA APPELLATE PROJECT              Counsel for Appellant
By: Annette Roach

JAMES E. STEWART, SR.                     Counsel for Appellee
District Attorney

CHRISTOPHER BOWMAN
JASON W. WALTMAN
ERIC M. WHITEHEAD
Assistant District Attorneys

* * * * *

Before STONE, COX, and MARCOTTE, JJ.

**COX, J.**

This appeal arises out of the First Judicial District Court, Caddo Parish, Louisiana. Zhane Quinn Persley was found guilty as charged of second degree murder, in violation of La. R.S. 14:30.1. Persley was sentenced to life imprisonment at hard labor without the benefit of parole, probation, or suspension of sentence. Persley now appeals. For the following reasons, we affirm Persley's conviction and sentence.

## FACTS

Devacseya Doyle was shot in front of Willow Trace Apartments in Shreveport, Louisiana on October 24, 2020. Persley was arrested on March 20, 2022, for the second degree murder of Doyle.

On July 29, 2024, the State filed a motion in limine to admit out of court statements of Jakalyne Brown pursuant to La. C.E. art. 804(B)(7) and a notice of its intent to offer evidence of other crimes, wrongs, or acts under La. C.E. art. 404(B). The State asserted that Persley and another inmate, Shamichael Sabbath, attempted to persuade Brown to testify falsely or refuse to appear at trial; therefore, Persley attempted to obstruct justice and waived any confrontation clause objections. At the hearing on the State's motion and notice, the State introduced phone calls from Persley and Sabbath while incarcerated, in which they discussed Brown's testimony and her not showing for trial. The trial court held the 804(B)(7) forfeiture by wrongdoing ruling until trial to see whether Brown would appear and testify. As to the 404(B) notice regarding conspiracy to obstruct justice, the trial court ruled that the calls were not hearsay, as they clearly showed consciousness of guilt. Defense Counsel objected to the ruling.

The jury trial commenced on August 6, 2024. Shreveport Police Department ("SPD") Corporal June Bradley testified that at about 9:05 a.m. on October 24, 2020, she was dispatched to Willow Trace Apartments, where she observed a male lying in the parking lot and a crowd of people. She stated that she called the fire department and spoke with a distraught female, who was yelling that it was her fault. She testified that the distraught female was Brown. Cpl. Bradley testified that Brown told her that the deceased man, Doyle, was a friend of hers, and they spent the previous night together; Doyle went downstairs to the car while she locked the apartment door; she saw her ex-boyfriend, Persley, get out of his green Jeep, pull a firearm from his pants, shoot once in the air, and then fire toward Doyle; Doyle ran after the first shot was fired in the air but fell to the ground when he was subsequently shot; and after Doyle fell, Persley ran. Cpl. Bradley testified that while speaking with Brown in the back of the police car, Persley called Brown. A recording from Cpl. Bradley's motor video system was played for the jury.

Brown testified that she knew Doyle for about five months prior to his shooting and dated Persley from February of 2020 until October of 2020. She stated that she and Perley lived together, had a romantic relationship, and the relationship was sometimes "toxic" because they argued and fought. Brown stated that she and Persley ended their relationship two or three days prior to the shooting.

Brown testified that the morning of the shooting, she and Doyle were leaving her apartment, she turned to lock the door, and Doyle headed downstairs. She stated that she heard Persley arrive and say, "This is what we doing now." She testified that she saw Persley shoot in the air and then

2

toward Doyle, who was running away. Brown stated that she ran back inside her apartment and called her mom; when she walked back outside, she saw Doyle on the ground.

After refreshing her memory, Brown testified that she told detectives that when Persley called her while she was in the back of the police car, he asked her if she had given his name to the police. Brown testified that she received phone calls from Persley on July 11 and 25, 2024, prior to trial.

On cross-examination, Brown stated that she had been seeing Doyle for four or five months, at the same time she was seeing Persley; she had a romantic relationship with both.

Dr. James Traylor, Jr., an expert in forensic pathology, testified that he performed the autopsy on Doyle. He testified that Doyle was shot on the back right side of his head and the bullet exited on the upper left side of his head. He stated that abrasions on Doyle's face indicate that he fell forward.

SPD Sergeant Jennifer White testified that she was part of the crime scene investigation of the shooting. Crime scene photos taken by Sgt. White were introduced into evidence.

Phillip Stout testified that he is the firearms supervisor of the North Louisiana Crime Lab in Shreveport. He stated that the five fired 9mm cartridge cases found at the scene were fired from the same weapon.

Rolanda Lavarry testified that her son is Shamichael Sabbath, a close friend of Persley's and an inmate at the same facility as Persley. She stated that Sabbath called her July 25, 2024, and he asked her to add his brother to the call. Sabbath then asked his brother to contact Jakalyne and tell her to lie on the stand. Ms. Lavarry did not know Jakalyne Brown, but she was aware that Sabbath had a different friend named Jakalyne.

3

SPD Sergeant Parker Crockett testified regarding phone and text communications from Persley and Sabbath while incarcerated. He stated that Persley texted Brown, but she did not reply. Upon review of the call logs, Persley and Sabbath attempted to call Brown eight times from July 4 to August 5, 2024. A July 11 call from Sabbath's PIN to Brown was played for the jury; the caller stated, "I can be home by the end of the year." On July 25, 2024, Sabbath's PIN was used to call Jamarcus Haley, and a third party was added to the call. The caller stated that he was calling for Persley. Someone in the background of the call states, "If you do get on the stand, say you were tripping." The third party to the call is later identified as "Zhane's girl." A second call from July 25, 2024, was placed from Sabbath's PIN to Camry Taylor; the caller first identifies himself as Sabbath and then says it is Persley. Persley states that a life is on the line and "all they got is her."

On cross-examination, Sgt. Crockett stated there is video surveillance available to identify who was making the calls, but there are no cameras inside the cells, where a tablet can be used to send messages.

The State rested after Sgt. Crockett's testimony. The Defense rested as well. The jury deliberated from 10:40 a.m. until 12:25 p.m. and returned a verdict of guilty as charged of second degree murder. Persley filed a motion for new trial and motion for post-verdict judgment of acquittal. Both were denied.

At sentencing, the trial court found that there was an undue risk that Persely would commit another crime if given a suspended sentence, he is in need of correctional treatment or a custodial environment, and a lesser sentence would deprecate the seriousness of the crime. The trial court found

4

the following aggravating factors to apply: he knowingly created a risk of death or great bodily harm; he used actual violence in the commission of the offense; subsequent to the offense, he used or caused others to use violence, force, or threats with the intent to influence the outcome of the proceedings; and the crime resulted in a significant permanent injury or economic loss to the victim or his family. The trial court did not find any mitigating factors applicable. The trial court sentenced Persley to life imprisonment at hard labor without the benefit of parole, probation, or suspension of sentence; fines, costs, and court fees were waived.

After sentencing, Persely filed a motion to reconsider sentence, which was denied. Persley now appeals.

## DISCUSSION

Persley argues that the trial court erred in allowing the State to introduce at trial other crimes or bad acts evidence of an alleged conspiracy to obstruct justice. The State argued at trial that Persley attempted to persuade Ms. Brown not to appear at trial. Persley highlights that the calls were made with another inmate's PIN, and the State offered no proof that Persley was involved in the calls. He asserts that the State simply relied on the fact that the calls would have benefited him instead of proving the calls were from him. He argues that the inadmissible hearsay evidence was improperly presented to the jury as the State failed to prove that Persley was a participant in the alleged conspiracy and failed to offer independent admissible evidence of the existence of a conspiracy between Persley and one or more individuals. He asserts that the admission of the evidence did nothing but inflame the jury against him. Persley requests a new trial.

La C.E. art. 404(B)(1)(a) provides:

5

Except as provided in Article 412 or as otherwise provided by law, evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, of the nature of any such evidence it intends to introduce at trial for such purposes, or when it relates to conduct that constitutes an integral part of the act or transaction that is the subject of the present proceeding.

Generally, evidence of other acts of misconduct is not admissible because it creates the risk that the defendant will be convicted of the present offense simply because the unrelated evidence establishes him or her as a "bad person." *State v. Jackson*, 625 So. 2d 146 (La. 1993); *State v. Mosley*, 51,168 (La. App. 2 Cir. 6/21/17), 223 So. 3d 158.

Even when the other crimes evidence is offered for a purpose allowed under Article 404(B)(1), the evidence must have substantial relevance independent from showing defendant's general criminal character and thus is not admissible unless it tends to prove a material fact at issue or to rebut a defendant's defense. *State v. Taylor*, 16-1124 (La. 12/1/16), 217 So. 3d 283, 292. It is the duty of the district court in its gatekeeping function to determine the independent relevancy of this evidence and balance the probative value of the other crimes, wrongs, or acts evidence against its prejudicial effects before the evidence can be admitted. *State v. Taylor, supra*.

The State claimed the statements were an exception to hearsay under La. C.E. art. 801(D)(3)(b) because Persley and Sabbath engaged in a conspiracy to obstruct justice, in violation of La. R.S. 14:130.1. La. C.E. art.

6

801(D)(3)(b) states that "a statement by a declarant while participating in a conspiracy to commit a crime or civil wrong and in furtherance of the objective of the conspiracy, provided that a prima facie case of conspiracy is established" is not hearsay.

La. R.S. 14:26(A) defines criminal conspiracy as:

> Criminal conspiracy is the agreement or combination of two or more persons for the specific purpose of committing any crime; provided that an agreement or combination to commit a crime shall not amount to a criminal conspiracy unless, in addition to such agreement or combination, one or more of such parties does an act in furtherance of the object of the agreement or combination.

La. R.S. 14:130.1(A) provides the following definition of obstruction of justice, in pertinent part:

> A. The crime of obstruction of justice is any of the following when committed with the knowledge that such act has, reasonably may, or will affect an actual or potential present, past, or future criminal proceeding as described in this Section:
>
> (4) Inducing or persuading or attempting to induce or persuade any person to do any of the following:
>
> (a) Testify falsely or, without right or privilege to do so, to withhold any testimony.
>
> (b) Without the right or privilege to do so, absent himself from such proceedings despite having received service of a subpoena.

To admit evidence of other crimes, wrongs, or acts committed by the defendant, the State bears the burden of proving that the defendant committed such crimes, wrongs, or acts. *State v. Curtin*, 22-1110 (La. App. 1 Cir. 10/5/23), 376 So. 3d 918, *writ denied*, 23-01464 (La. 4/23/24), 383 So. 3d 603. When seeking to introduce prior crimes evidence, the State need only make a showing of sufficient evidence to support a finding that the defendant committed the other crime, wrong, or act. *State v. Johnson*,

7

52,762 (La. App. 2 Cir. 8/14/19), 277 So. 3d 1263, *writ denied*, 19-01670 (La. 7/17/20), 298 So. 3d 176.

The trial court is vested with much discretion in determining relevance, and its determination regarding the relevance and admissibility of evidence is not to be overturned on appeal in the absence of a clear abuse of discretion. *State v. Cole*, 55,287 (La. App. 2 Cir. 1/10/24), 378 So. 3d 343, 350, *writ denied*, 24-00235 (La. 9/24/24), 392 So. 3d 1140.

The State made a sufficient showing that Persley and Sabbath conspired to obstruct justice by showing their use of Sabbath's PIN to avoid detection by officers and their repeated conversations to persuade Brown not to testify. Therefore, the phone calls presented a prima facie showing of a conspiracy to obstruct justice and are not hearsay.

The trial court found that the phone calls were admissible because the calls showed a consciousness of guilt and statements against Persley's interest. We do not find that the trial court abused its discretion in its admission of the phone calls. As stated previously, the phone calls were not hearsay; therefore they were admissible under 404(B) to show Persley's identity as the shooter. Persley and Sabbath repeatedly asked that Brown not identify Persley by stating she did not see anything or not testifying at trial. The phone calls show that both Persley and Sabbath used Sabbath's PIN to avoid detection when making phone calls about Persley's case. Persley identified himself in a call to Camry Taylor before discussing Brown's involvement in his case. When talking to Brown, Sabbath stated, "*[W]e* wouldn't even be trying to contact you if there was some \*\*\*\* like that." (emphasis added.) Brown admitted at trial that she received calls from

8

Persley. These calls included statements that were against Persley's interest and identified him in the crime.

Because the trial court did not abuse its discretion in admitting the calls, we find that this assignment of error lacks merit. We affirm Persley's conviction for the second degree murder of Doyle.

## CONCLUSION

For the foregoing reasons, Persley's conviction and sentence are affirmed.

**AFFIRMED.**