MOORE, J.
12Chadward Channell Welch, convicted of aggravated flight from an officer, appeals his adjudication as a third felony offender and his sentence of life at hard labor without benefits. For the reasons expressed, we affirm.
Shortly after 2:00 am on May 21, 2009, Shreveport Police Officer A.J. Kelly saw an older-model Olds 88 Royale make an illegal U-turn on Lakeshore Drive. Suspecting the driver was drunk, Officer Kelly flashed his emergency lights and sounded his siren to stop the Olds, but the driver sped off, leading the officer on' a high-speed chase into the Queensborough neighborhood. In the course of the chase, the driver drove on the wrong side of Darien Street and ran two stop signs and a *444 flashing red light; he eventually crashed the car into a utility pole at the corner of West College Street and Arkansas Avenue. As Officer Kelly pulled alongside the Olds, the driver got out, giving the officer a good look at his face; the driver then started running north on Arkansas Avenue. Officer Kelly chased him on foot but lost him in an alley several blocks away.
¡^Identification officers traced the Olds to Sheba Taylor, who said that her boyfriend, Welch, had been using the car until she took the keys away from him, and shortly after that, the car turned up stolen. Detective Gordon, who had prior dealings with Welch, showed Officer Kelly a photo lineup; Officer Kelly immediately and positively picked Welch as the driver of the Olds. Detective Gordon then obtained a warrant for his arrest for aggravated flight from an officer, La. R.S. 14:108.1 C, and Welch turned himself in at the Caddo Correctional Center on May 26.
The state charged Welch by amended bill of information with one count of aggravated flight from an officer.[1] On the day of trial, he withdrew his plea of not guilty and pled guilty as charged. The only agreement with the state was that Welch would cooperate in providing information about a homicide; the prosecutor stated that in his sole discretion, the state would elect whether to charge him as a habitual offender, based on the value of the information provided. Before accepting the guilty plea, the court conducted a full Boy-kin examination in which Welch also conceded that his habitual offender status depended on his giving useful information to the state.
One month later, the state charged Welch as a third felony offender, citing his 2001 guilty plea to possession of a Schedule I CDS (Ecstasy) and [4his 2008 guilty plea to attempted possession with intent to distribute a Schedule II CDS (cocaine) as predicate felonies. At trial, the state offered certified copies of both the prior bills of information and court minutes; a forensics expert testified that Welch’s fingerprints matched those on the certified bills. Welch complained that the state had reneged on its agreement to forgo a habitual offender bill in exchange for information on the homicide. After a long colloquy with the court, he admitted that the habitual offender bill was solely in the state’s discretion, based on the usefulness of the information provided, and that he had indeed committed aggravated flight from an officer. The court adjudicated him a third felony offender and sentenced him to the mandatory life in prison at hard labor, without benefit of parole, probation or suspension of sentence, under La. R.S. 15:529.1 A(1)(b)(ii).[2]
After retaining new counsel, Welch filed a motion for new trial on the habitual offender bill, alleging deficiencies in both predicate convictions, and a motion to reconsider sentence, urging that a departure from mandatory life was warranted because, inter alia, no one was hurt in the instant offense and the prior felonies were nonviolent. The district court held a full hearing but denied both motions, and this appeal followed.
|fiBy his first assignment of error, Welch urges the court erred in denying his motion for new trial because the prior convictions were invalid predicate felonies. He contends that in the 2008 guilty plea, *445 the court failed to advise him of the maximum sentence for possession of a Schedule I CDS, as required by La. C. Cr. P. art. 556.1, and of the fact that the conviction could be used to enhance a subsequent sentence. He also contends that the state introduced only the court minutes of his 2001 guilty plea; although these minutes recited compliance with Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969), without a transcript he was denied the right to challenge that conviction for irregularities not disclosed in the minutes.
Welch correctly cites the text of La. C. Cr. P. art. 556.1 A(l), which requires a court, before accepting a guilty plea in a felony case, to address the defendant in open court and advise him of “the mandatory minimum penalty provided by law, if any, and the maximum possible penalty provided by law.” However, the supreme court has held that advice “with respect to the defendant’s sentencing exposure * * * has never formed a part of this Court’s core Boykin requirements for the entry of a presumptively valid guilty plea in any case.” State v. Anderson, 98-2977 (La.3/19/99), 732 So.2d 517; State v. Guzman, 99-1753 (La.5/16/00), 769 So.2d 1158. Similarly, the supreme court has held that trial courts need not advise defendants that a | ^conviction may be used to enhance a subsequent sentence. State v. Muse, 367 So.2d 789 (La.1979); State v. Montalban, 2000-2739 (La.2/26/02), 810 So.2d 1106. Neither of the deficiencies cited by Welch will invalidate his 2008 guilty plea.
The supreme court has also held that the state need not introduce a “perfect” transcript of a guilty plea to prove a prior conviction. The state may offer “a guilty plea form, a minute entry, an ‘imperfect’ transcript, or any combination thereof,” and this offering shifts the burden of proof to the defendant to show some irregularity. State v. Shelton, 621 So.2d 769 (1993); State v. Carlos, 98-1366 (La.7/7/99), 738 So.2d 556. The minutes of Welch’s 2001 guilty plea show that he was represented by counsel and advised of his Boykin rights; the burden shifted, but Welch offered nothing but speculation to counter the state’s showing. On this record, the district court did not err in finding sufficient proof of the 2001 conviction. This assignment of error lacks-merit.
By his second and third assignments of error,[3] Welch urges the court erred in denying his motion to reconsider sentence and depart from the mandatory life at hard labor prescribed by R.S. 15:529.1 A(1)(b)(ii), and in imposing an excessive sentence. He argues that no one was- hurt in his aggravated flight from Officer Kelly; neither of his prior offenses was a |7crime of violence or a sex offense; and one of his prior felonies, simple possession of Ecstasy, carried a maximum of only 10 years in prison, the minimum to qualify as a predicate offense under R.S. 15:529.1 A(1)(b)(ii). He strongly urges that it is anomalous for a person convicted of aggravated flight from an officer, an offense bearing a maximum sentence of only two years and in which nobody was hurt, to be sent to Angola for life ivithout benefits. He concludes that the sum of these facts proves that he is “exceptional,” a “victim of the legislature’s failure to assign sentences that are meaningfully tailored to the culpability of the offender, the gravity of the offense, and the circumstances of the case.” State v. Johnson, 97-1906 (La.3/4/98), 709 So.2d 672; State v. Lindsey, 99-3256 (La.10/17/00), 770 So.2d 339.
*446 The state responds that Welch’s conduct did indeed pose a great and continued danger to the public, as illustrated by the fact that the chase ended only when he crashed his girlfriend’s car into a pole.
At the time of this offense, R.S. 15:529.1 A(1)(b)(ii) provided that if the third felony and the two prior felonies “are felonies defined as a crime of violence under R.S. 14:2(B), * * * or as a violation of the Uniform Controlled Substances Law punishable by imprisonment for ten years or more,” then the penalty is imprisonment for life without benefit of parole, 1 ^probation or suspension of sentence. Aggravated flight from an officer is a crime of violence, La. R.S. 14:2 B(39), and both of the prior offenses, possession of Ecstasy, R.S. 40:966 E, and attempted possession with intent to distribute cocaine, R.S. 40:979 and 967 A(1), were violations of the controlled dangerous substances lawp the court properly applied the presumptive life sentence of § 529.1 A(1)(b)(ii).
A sentence violates La. Const. Art. I, § 20, if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless and needless imposition of pain and suffering. State v. Smith, 2001-2574 (La.1/14/03), 839 So.2d 1; State v. Dorthey, 623 So.2d 1276 (La.1993). A sentence is deemed grossly disproportionate if, when the crime and punishment are viewed in light of the harm done to society, it shocks the sense of justice or makes no reasonable contribution to acceptable penal goals. State v. Guzman, supra. The habitual offender law has been found constitutional in its entirety, and the minimum sentences it imposes are presumptively constitutional. State v. Johnson, supra. The sentencing court may depart from the prescribed minimum sentence, but this should occur rarely and only when the defendant “clearly and convincingly show[s] that he is exceptional, which in this context means that because of unusual circumstances this defendant is a victim of the legislature’s failure to assign | sentences that are meaningfully tailored to the culpability of the offender, the gravity of the offense, and the circumstances of the case.” Id., at p. 8, 709 So.2d at 676. Critically, the sentencing court may not rely solely on the nonviolent nature of the instant or predicate crimes to justify rebutting the presumption of constitutionality. The lack of violence cannot be the only reason, or even the major reason, for declaring such a sentence excessive. Id., at pp. 7-8, 709 So.2d at 676; State v. Winslow, 45,414 (La.App. 2 Cir. 12/15/10), 55 So.3d 910.
On close review, we do not find that the district court abused its discretion in declining to depart from the mandatory sentence of R.S. 15:529.1 A(1)(b)(ii). We recognize that mandatory life without benefits for a third felony offense is an enormous enhancement from the two-year maximum for the offense of conviction, and we commend counsel for articulating the issue so well. However, in addition to the two prior convictions for drug offenses, Welch’s PSI shows numerous other offenses that were dismissed with the guilty pleas, misdemeanor traffic and drug arrests, and a poor probation and parole record; in fact, he had been on parole only two months when the instant offense occurred. He was also close to a homicide investigation, as evidenced by his deal with the state. The impassive record shows a 30-year-old who has, regrettably, spent most of his | inadult life either participating in or being suspiciously close to crime, except for two stretches in the Department of Public Safety and Corrections. The record does not clearly and convincingly show that he is “exceptional” as defined in State v. Johnson, supra; in light of his culpability and the gravity of the offense, the court *447 was not required to depart from the legislative mandate. These assignments of error lack merit.
We have reviewed the entire record and find nothing we consider to be error patent. La. C. Cr. P. art. 920(2). For these reasons, Welch’s conviction, adjudication as a third felony offender and sentence are affirmed.
AFFIRMED.

. The original bill of information, filed two days after his surrender at the CCC, charged him with conspiracy to possess a Schedule II CDS (cocaine).

. This subsection was redesignated as R.S. 15:529.1 A(3)(b) by 2010 La. Acts No. 973, § 2, effective July 6, 2010.

. These are referred to the in body of the brief as the third and fourth assignments.