Judgment rendered February 26, 2025.
Application for rehearing may be filed
within the delay allowed by Art. 922,
La. C. Cr. P.

No. 56,184-KA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

STATE OF LOUISIANA                          Appellee

versus

TOBIAS WILLIAMS                             Appellant

* * * * *

Appealed from the
First Judicial District Court for the
Parish of Caddo, Louisiana
Trial Court No. 360,400

Honorable Christopher T. Victory, Judge

* * * * *

LOUISIANA APPELLATE PROJECT          Counsel for Appellant
By: Edward Kelly Bauman

JAMES EDWARD STEWART, SR.             Counsel for Appellee
District Attorney

ALEX L. PORUBSKY
SAMUEL S. CRICHTON
Assistant District Attorneys

* * * * *

Before ROBINSON, HUNTER, and MARCOTTE, JJ.

**MARCOTTE, J.**

This criminal appeal arises from the First Judicial District Court, Parish of Caddo, the Honorable Christopher T. Victory presiding. Defendant, Tobias Williams, was found guilty of aggravated flight from an officer, adjudicated a fourth-felony offender, and sentenced to life imprisonment without the benefits of probation or suspension of sentence. On appeal, Williams' status as a fourth-felony offender was affirmed, but this court vacated his life sentence and remanded his case for resentencing to allow the trial court to consider Williams' presentence investigation report ("PSI"). Upon considering Williams' PSI, the trial court resentenced Williams to life imprisonment without the benefits of probation or suspension of sentence. For the following reasons, we affirm.

## FACTS

The following facts are taken verbatim from Williams' prior appeal, *State v. Williams*, 55,290 (La. App. 2 Cir. 9/27/23), 372 So. 3d 921, *writ denied*, 23-01397 (La. 3/5/24), 380 So. 3d 570.

> Around 3:40 a.m. on August 17, 2018, Shreveport Police Department ("SPD") Officer Corey Rabalais was on patrol in the Highland-Stoner Hill neighborhood of Shreveport when he observed an SUV with an obscured license plate driving down Stoner Avenue. Officer Rabalais initiated a traffic stop by turning on his lights and siren, then pulling his patrol car behind the SUV; however, the driver, later identified as Tobias Williams, refused to comply and continued to drive away. A chase ensued during which Williams committed numerous traffic violations recorded by Officer Rabalais's dash camera in his patrol car. The footage showed multiple 25 and 35 mph speed limit signs on the roads which Williams traveled. The footage further revealed Officer Rabalais was driving at times in excess of 60 mph in order to keep up with Williams. Williams is also seen operating his vehicle on the wrong side of the road, failing to stop at multiple red lights, and driving through numerous stop signs.

During this high-speed pursuit, Officer Rabalais was joined by Corporal Jon Smith, also with the SPD. Cpl. Smith's dash camera recorded footage of a bicyclist on the same street as Williams and Officer Rabalais; however, Williams and Officer Rabalais turned before ever reaching the bicyclist's position. Additionally, both recordings reflect this high-speed chase lasted about 15 minutes, having occurred between 3:40 a.m. and 3:55 a.m. that morning.

Williams eventually encountered a construction roadblock which forced him to stop his SUV. He immediately exited the vehicle and fled on foot, but Officer Rabalais was unable to catch up to him. Another SPD officer joined in the foot chase and, after spotting Williams, gave verbal commands to put his hands up and get down on the ground, which Williams ignored. At some point during the chase, Sergeant Dan Sawyer, a K9 officer with the SPD, arrived to help apprehend Williams. Sgt. Sawyer's K9 was able to detain Williams by biting his arm and holding on until Sgt. Sawyer arrived. He was arrested, then transported to the hospital for treatment of his dog bite wounds.
….

Following arrest, Williams was charged by bill of information with one count of aggravated flight from an officer, La R.S. 14:108.1(C). Jury trial began on December 14, 2021, and resulted in Williams' conviction as charged.

The state then filed a habitual offender bill of information asserting Williams' new conviction for aggravated flight from an officer was his fourth felony offense, La. R.S. 15:529.1. Williams' three prior felony convictions were listed as follows:

> 1) January 28, 2008, guilty plea to Illegal Possession of Stolen Things;
>
> 2) February 11, 2016, guilty plea to Aggravated Battery; and
>
> 3) February 11, 2016, guilty plea to Illegal Possession of Stolen Firearms.

In a motion to quash, Williams argued his two February 11, 2016, guilty pleas should only be treated as one prior felony conviction. On May 19, 2022, the trial court held a multiple offender hearing and found Williams was a fourth felony offender. The trial court, noting its consideration of La. R.S. 15:529.1, concluded the events which led to Williams' February 11, 2016, convictions were not connected, were not a single criminal episode, and would be treated as two separate felony convictions.
….

2

On June 20, 2022, Williams was sentenced to life imprisonment at hard labor without the benefit of probation or suspension of sentence, La. R.S. 15:529.1(A)(4)(a). The trial court first listed Williams' prior felony convictions and reiterated its finding Williams was a fourth felony habitual offender. The trial court also noted two of Williams' four felony convictions were for crimes of violence, aggravated battery and the instant conviction for aggravated flight from an officer, La. R.S. 14:2(B)(5) and (39). In support of the life sentence, the trial court stated it had considered the sentencing guidelines, then thoroughly detailed Williams' extensive criminal record, expressed its belief Williams was not remorseful, and concluded Williams did not understand the seriousness of his crimes, nor would he in the future.

*Id.* at p. 1-3, 380 So. 3d at 923-24

Williams appealed his habitual offender status, arguing that the trial court should only have adjudicated him a third-felony offender, as his February 11, 2016, convictions for aggravated battery and illegal possession of stolen things occurred on the same day and should have been considered one felony for habitual offender purposes. Williams also argued his life sentence was excessive given his prior felony offenses and in view of his instant felony offense. He argued his aggravated flight from an officer should not have been classified as a crime of violence because he did not create a risk of harm or injury, as there were no vehicles present during his offense and no injuries were reported. Williams also complained that the trial court did not order a PSI.

This court affirmed Williams' habitual offender adjudication as a fourth-felony offender, but it vacated his life sentence and remanded the case for resentencing. This court found that, given that the trial court imposed the maximum sentence from of a range of 20 years to life, the record was inadequate to determine whether Williams' life sentence was excessive. This court said that a PSI would have "shed some light on the

3

reasons and justifications for Williams' maximum life sentence." *Id.* at p. 15, 372 So. 3d at 931.  While the trial court thoroughly considered Williams' criminal record and his ability to be rehabilitated, this court observed that it made no mention of Williams' personal history or evaluated the seriousness of his instant offense and prior felonies.  This court stated that while the roads were empty (other than the bicyclist on an adjacent road) when he committed his instant offense, Williams endangered the lives of multiple officers during their chase.  *State v. Williams*, *supra*.  This court noted:

> Williams' argument may lend itself more to possible mitigation as to the relative seriousness of his offense when compared to other high-speed chases where multiple bystanders are actually put in harm's way or accidents occur.  The trial court will need to evaluate the facts of this case to determine the relative seriousness of Williams's conduct, in addition to the relative seriousness of his prior convictions.

*Id*. at p. 17, 372 So. 3d at 932.

On February 15, 2024, Williams was resentenced.  The trial court informed Williams of his appellate and post-conviction relief time constraints.  The trial court reiterated that the sentencing range for Williams as a fourth-felony offender was 20 years to life.  The court found that all three factors from La. C. Cr. P. art. 894.1(A) were applicable.  The court said that, looking at his criminal history, there was an undue risk that during a period of probation Williams would commit another crime.  The court found that Williams needed correctional treatment in a custodial environment due to his "lack of productive involvement in society up to this point in his life as shown by the [PSI] on his family history."  The court said imposition of a lesser sentence would deprecate the seriousness of his crime; the court again referenced his criminal history and noted that his instant and aggravated battery offenses were crimes of violence.

4

On the same day, the trial court filed written reasons for its sentence and read portions of that filing during the resentencing hearing. The court also filed Williams' PSI into the record. The court addressed the specific findings from this court's opinion which found the record lacking support for Williams' life sentence. The trial court sentenced Williams to life at hard labor without the benefits of probation or suspension of sentence.

The trial court included the following in its written reasons for Williams' life sentence:

1. First, the court detailed Williams' criminal history, which began in 2008; he was arrested and charged at least 18 times, and he had 3 prior felony convictions, not including the instant offense.

a. On December 31, 2007, Williams was found in felony possession of a stolen vehicle valued at over $500. He knew or had reason to know that the vehicle was the subject of a robbery or theft. He pled guilty to the offense on January 28, 2008.

b. On December 9, 2010, victim Xavier Stills was shot outside an apartment building during an illegal narcotics transaction. Stills clinically died while being transported to the hospital, but he was revived. Witnesses said that Williams was present when Stills was shot by another, that he removed a necklace from Stills, and two handguns were present at the shooting. The court stated it considered a series of events involving firearms, narcotics, and attempted murder to be "extremely dangerous, serious, and warranting the harshest of penalties."

c. Williams' second 2016 felony conviction followed the previous shooting incident, where he was convicted for illegal possession of a firearm. On December 10, 2010, police officers went to an apartment in the same complex where Stills was shot the day before. Williams was present and the apartment was searched. Officers found crack cocaine and a stolen handgun. Williams later admitted he was present when Stills was shot. The court also found that incident to be serious, dangerous, and warranting a harsh penalty.

5

d. The court detailed Williams' instant offense, aggravated flight from an officer. It stated that Williams put the lives of everyone on the street in danger, as well as the lives of the officers giving chase. The court noted that the offense was a crime of violence.

2. Williams was arrested multiple times for gun-related crimes.

3. Williams was charged with multiple narcotics-related crimes, several of which involved firearms, including possession with intent to distribute a Schedule I, possession with intent to distribute a Schedule II, illegal carrying of weapons while in possession of controlled dangerous substances, and possession of a firearm by a convicted felon.

4. Williams was arrested and charged with multiple crimes that showed violent tendencies.

5. Williams was arrested for attempted first-degree murder in 2016, two counts of attempted second-degree murder in 2016, one count of second-degree murder in 2016, and three counts of second-degree murder as late as 2020.

6. Williams was sentenced to different hard labor sentences only to be released and commit additional crimes

7. Williams did not appear remorseful.

8. His criminal behavior led the court to believe he did not understand the seriousness of his crimes and would not in the future.

9. When discussing Williams' lack of potential for rehabilitation, the court noted that he never held a steady job, did not have custody of his only child, committed multiple serious, violent felonies, admitted to being present during the attempted killing of one person, and was charged multiple times with murder and attempted murder.

10. Williams' PSI showed that he was 34 years old and had 2 brothers and 4 sisters. His father passed away when Williams was in the third grade. Williams attended school up to the tenth grade. He said that he was mostly a good kid in school but was somewhat of a troublemaker in high school, when he stole a car, got arrested, was placed on probation, and was expelled from school. He never attempted to return to school to get a diploma or GED. He had one job where he worked in an oil

field for three months. He was not married and the mother of his only child had full custody. Williams was not religious and did not have a religious preference.

On March 14, 2024, Williams filed a motion to reconsider sentence, arguing that a natural life sentence is out of proportion with the seriousness of his past offenses. Williams asserted that since there were no vehicles on the road during his flight from law enforcement, the relative severity of the crime is not so high as to warrant life in prison. The trial court disagreed and denied the motion. Williams now appeals.

## DISCUSSION

*Habitual Offender Status*

Williams argues that nothing in the record shows that the state proved his discharge dates from custody for his prior offenses. He claims that the state's failure to provide such proof constitutes an error patent and his habitual offender adjudication should be vacated and his case remanded for further proceedings.

The state argues that Williams' habitual offender adjudication is not subject to relitigation as his fourth-felony habitual offender status was affirmed by this court. The state points out that Williams sought review with the Louisiana Supreme Court, which denied his writ, making his conviction and habitual offender adjudication final.

Louisiana's constitution does not afford a criminal defendant the right to seek a second direct appeal. Once the appellate court renders a judgment and that judgment is final, the defendant no longer has a right to appeal the decision, but is limited to seeking supervisory review. La. C. Cr. P. art. 912.1(C)(1); La. C. Cr. P. art. 922; *State v. Jackson*, 39,515 (La. App. 2 Cir. 3/2/05), 895 So. 2d 695.

7

Following the affirmance of his habitual offender adjudication in *State v. Williams, supra*, Williams sought supervisory review with the Louisiana Supreme Court, which was denied. *State v. Williams*, 23-01397 (La. 3/5/24), 380 So. 3d 570. Williams did not seek rehearing before the supreme court, and his conviction and habitual offender adjudication are now final. La. C. Cr. P. art. 922(A).

Pursuant to this court's order in *State v. Williams, supra*, Williams was resentenced on February 15, 2024, again receiving life imprisonment without the benefits of probation or suspension of sentence. His resentencing only entitles him to appeal the length of his new sentence. He is not permitted a second bite at the apple to relitigate the merits of his habitual offender adjudication. Accordingly, this assignment of error is without merit.

*Excessive Sentence*

Williams argues in the alternative that his life sentence is constitutionally excessive given the facts of his case. Williams contends that no other person was present or injured during his aggravated flight offense, so it was not the worst offense and he was not the worst offender. He argues that his aggravated flight offense should not have been considered a crime of violence. He claims that his predicate offenses of illegal possession of stolen things, aggravated battery, and illegal possession of stolen firearms were not the most egregious offenses warranting a life sentence. He points out that his arrests for different murder and attempted murder charges were only arrests and not convictions because the district attorney was unable to obtain indictments by which to charge him with those crimes. Williams asks that this court vacate his sentence and remand his case for resentencing.

The state contends that the trial court carefully considered Williams' personal and criminal history and provided exhaustive oral and written reasons to support his life sentence. The state argues that his life sentence is appropriate considering his criminal history, showing that he violated the law his entire adult life, amassing several felony convictions and arrests, including four charges for second-degree murder. Williams' sentence is within statutory limits and the trial court complied with the provisions found in La. C. Cr. P. art. 894.1 in sentencing him, weighing the aggravating and mitigating factors found therein. The state illustrates Williams' personal and criminal history, like that found in the trial court's written reasons for its sentence. The state asks that this court affirm Williams' life sentence.

In reviewing a sentence for excessiveness, this court uses a two-step process. First, the record must reflect that the trial court took the criteria set forth in La. C. Cr. P. art. 894.1 into account. The goal of La. C. Cr. P. art. 894.1 is to articulate an adequate factual basis for the sentence, not rigid or mechanical compliance with its provisions. *State v. Lanclos*, 419 So. 2d 475 (La. 1982). The trial court is not required to list every aggravating or mitigating circumstance, so long as it adequately considered them in particularizing the sentence to the defendant. *State v. Smith*, 433 So. 2d 688 (La. 1983). The important elements which should be considered are the defendant's personal history (age, family ties, marital status, health, employment record), prior criminal record, seriousness of the offense, and the likelihood of rehabilitation. *State v. Jones*, 398 So. 2d 1049 (La. 1981); *State v. Trotter*, 54,496 (La. App. 2 Cir. 6/29/22), 342 So. 3d 1116. These elements are consistently utilized by this Court when evaluating a sentence for constitutional excessiveness. *See State v. McCarthy*, 55,038 (La. App. 2

9

Cir. 6/28/23), 366 So. 3d 1266; *State v. McFarlin*, 54,754 (La. App. 2 Cir. 1/25/23), 354 So. 3d 888.

The trial court has wide discretion in the imposition of sentences within the statutory limits and such sentences should not be set aside as excessive in the absence of a manifest abuse of that discretion. *State v. Williams*, 03-3514 (La. 12/13/04), 893 So. 2d 7; *State v. Trotter, supra.* A trial judge is in the best position to consider the aggravating and mitigating circumstances of a particular case, and, therefore, is given broad discretion in sentencing. *State v. Bell*, 53,712 (La. App. 2 Cir. 1/13/21), 310 So. 3d 307. On review, an appellate court does not determine whether another sentence may have been more appropriate, but whether the trial court abused its discretion. *State v. Trotter, supra*; *State v. Bell, supra.*

As a general rule, maximum or near maximum sentences are reserved for the worst offenders and the worst offenses. *State v. Cozzetto*, 07-2031 (La. 2/15/08), 974 So. 2d 665; *State v. Gibson*, 54,400 (La. App. 2 Cir. 5/25/22), 338 So. 3d 1260, *writ denied*, 22-00978 (La. 3/7/23), 356 So. 3d 1053. For the crime of aggravated flight from an officer, the longest sentence Williams could have received was five years at hard labor, La. R.S. 14:108.1(E)(1). However, as a fourth felony offender, Williams faced up to life in prison. La. R.S. 15:529.1(A)(4)(a)-(c) provides the following sentencing ranges for fourth felony offenders:

> (4) If the fourth or subsequent felony is such that, upon a first conviction the offender would be punishable by imprisonment for any term less than his natural life then the following sentences apply:
>
> (a) The person shall be sentenced to imprisonment for the fourth or subsequent felony for a determinate term not less than the longest prescribed for a first conviction but in no

event less than twenty years and not more than his natural life.

(b) If the fourth felony and no prior felony is defined as a crime of violence under R.S. 14.2(B) or as a sex offense under R.S. 15:541, the person shall be imprisoned for not less than twenty years nor more than twice the longest possible sentence prescribed for a first conviction. If twice the possible sentence prescribed for a first conviction is less than twenty years, the person shall be imprisoned for twenty years.

(c) If the fourth felony and two of the prior felonies are felonies defined as a crime of violence under R.S. 14:2(B), or a sex offense as defined in R.S. 15:541 when the victim is under the age of eighteen at the time of commission of the offense, the person shall be imprisoned for the remainder of his natural life, without benefit of parole, probation, or suspension of sentence.

As set forth in La. R.S. 15:529.1(A)(4)(c), two prior felonies, as well as the fourth felony, must be crimes of violence to subject a defendant to a mandatory life sentence as a fourth felony offender. While Williams' fourth felony is defined as a crime of violence, only one of his prior three felonies, aggravated battery, meets that criterion, La. R.S. 14:2(5) and (39); therefore, his sentencing range was 20 years to life pursuant to La. R.S. 15:529.1(A)(4)(a).

Considering the trial court imposed the maximum sentence of life imprisonment, this court must determine whether the sentence imposed is constitutionally excessive in light of the record before us. After a thorough review of the record, we find the sentence was not constitutionally excessive. The trial court complied with La. C. Cr. P. art. 894.1 at Williams' resentencing hearing, focusing on the four categories cited by this court in *Williams, supra*: (1) prior criminal record; (2) likelihood of rehabilitation; (3) personal history; and (4) seriousness of offense.

11

Williams has an extensive criminal record that includes being charged with more than 25 criminal offenses since 2007, the bulk of which involved felony drug offenses or crimes of violence. In addition to the present conviction for aggravated flight, Williams' prior felony convictions include illegal possession of stolen things, aggravated battery, and illegal possession of a stolen firearm. Two of these offenses are crimes of violence as defined by La. R.S. 14:2(B).

Most concerning however, are Williams' arrests in 2016 and again in 2020 for a total of four counts of second-degree murder and three counts of attempted second-degree murder. The trial court was permitted to consider all prior criminal activity in particularizing a sentence, even where the arrest did not result in prosecution. *State v. Doyle*, 43,438 (La. App. 2 Cir. 8/13/08), 989 So. 2d 864; *State v. Russell*, 40,526 (La. App. 2 Cir. 1/27/05), 920 So. 2d 866, *writ denied*, 06-0478 (La. 9/29/06), 937 So. 2d 851. This pattern of conduct by Williams establishes his violent nature and propensity for continued criminal conduct.

We further find that Williams' prospects for rehabilitation outside the penal system are slim. He has either been incarcerated or unemployed his entire adult life. Nothing in the record suggests that Williams has the desire or capability to mend his ways and become a law-abiding citizen. The trial court specifically noted that Williams did not appear remorseful for his actions or even acknowledge his own culpability. Furthermore, his conviction for aggravated flight implies that he would sooner abscond from law enforcement in a manner that poses a threat to human life than accept any responsibility for his own conduct. Rehabilitation is unlikely.

At rehearing, the trial court duly considered Williams' personal history as well, and the trial court's amended written reasons in support of his sentence show that Williams' age, family ties, marital status, health, and employment record were taken into consideration when imposing the life sentence.

The trial court also took into account the seriousness of the offense. Williams willfully engaged in a 15-minute flight through Shreveport, driving over 60 miles per hour on residential streets on the wrong side of the road without stopping at red lights or stop signs. In fact, his vehicular flight only ended when he collided with a construction roadblock, at which point he fled on foot until a K9 officer apprehended him. We agree with the trial court that Williams' deliberate criminal conduct "put the lives of everyone on the street in danger along with the lives of law enforcement officers." Because of the trial court's thorough compliance with La. C. Cr. P. art. 894.1 on rehearing, the first step of our analysis is satisfied.

The second step in reviewing a sentence for excessiveness is a determination of whether the sentence is constitutionally excessive. A sentence violates La. Const. art. I, § 20, if it is grossly out of proportion to the severity of the crime or nothing more than a purposeless and needless infliction of pain and suffering. *State v. Dorthey*, 623 So. 2d 1276 (La. 1993); *State v. Trotter, supra*. A sentence is considered grossly disproportionate if, when the crime and punishment are viewed in light of the harm done to society, it shocks the sense of justice. *State v. Weaver*, 01-0467 (La. 1/15/02), 805 So. 2d 166.

Here, we do not find the sentence imposed was constitutionally excessive. When not incarcerated, Williams has spent the bulk of his adult

13

life either participating in violent criminal acts or "being suspiciously close to crime." *State v. Welch*, 45,950 (La. App. 2 Cir. 1/26/11), 57 So. 3d 442, *writ denied*, 11-0423 (La. 9/16/11), 69 So. 3d 1145. Many of Williams' convictions involve the use of a firearm, and seven of Williams' almost two dozen arrests are the most violent offenses one can commit in Louisiana: second-degree murder and attempted second-degree murder. We find that the trial court was well within its discretion to consider these arrests.

Williams received a life sentence under the habitual offender statute due to his continued lawlessness and his persistent disregard for the safety of others. Williams' 15-minute flight through Shreveport posed a significant risk not only to the unsuspecting public but also to the police officers engaged in the pursuit and tasked with the all-important duty of enforcing laws and protecting public welfare. Williams' criminal and dangerous flight is not mitigated by his sheer luck that the streets were quiet at that time. The lack of public injury does not support a claim of excessiveness. *State v. Winslow*, 45,414 (La. App. 2 Cir. 12/15/10), 55 So. 3d 910, *writ denied*, 11-0192 (La. 6/17/11), 63 So. 3d 1033.

Based on the record before us, we do not find that the sentence imposed was grossly out of proportion to the severity of Williams' crimes, nor was it simply a needless infliction of pain and suffering. Accordingly, the trial court did not abuse its wide discretion in resentencing Williams to life without benefit of probation or suspension of sentence.

## CONCLUSION

For the reasons expressed, Williams' conviction and sentence are affirmed.

**AFFIRMED.**

14